### WEEKS, Secretary of War, v. UNITED STATES ex rel. CREARY.

(Court of Appeals of District of Columbia. Submitted October 10, 1921. Decided January 3, 1922. Writ of Error to Supreme Court of United States Allowed January 20, 1922.)

No. 3693.

1. **Army and navy ⬳11—Officer, not objecting to proceedings before court of inquiry, cannot object in mandamus proceeding to compel reinstatement.**

    Where an army officer, at whose request a court of inquiry was convened, to pass upon his classification under National Defense Act, § 24b, was not furnished with a full copy of his record in the War Department, as required by the statute, but was permitted to examine all the original records in the presence of the court, and interposed no objection to the proceedings, it is too late to raise the objection in a mandamus proceeding to compel the Secretary of War to vacate an order discharging him, and to restore him to his former rank.

2. **Army and navy ⬳11—Board convened to determine cause of officer's unsatisfactory classification not confined to record of court of inquiry.**

    Under National Defense Act, § 24b, providing for the classification of army officers, for an opportunity to any officer classed in class B to appear before a court of inquiry, and for the forwarding of the record of such court to a final classification board, and providing that, when an officer is placed in class B, a board shall be convened to determine whether his classification was due to his neglect, misconduct, or avoidable habits, its finding to determine whether he shall be discharged or placed on the retired list, the board convened to determine whether his classification was due to his neglect, misconduct, or avoidable habits is not confined to the record made by the court of inquiry.

3. **United States ⬳28—President may not delegate judicial duties.**

    Where a duty imposed upon the President is judicial in character, it may not be delegated away.

4. **Army and navy ⬳11—President's duty to act on findings of classification board may be delegated to Secretary of War.**

    Under National Defense Act, § 24b, providing for the classification of army officers, the proceedings are purely administrative, and do not partake in any sense of a judicial character, and the President's duty with respect to reviewing the findings of the final classification board and issuing an order of approval or disapproval is purely executive, and can be lawfully delegated to the Secretary of War.

5. **Army and navy ⬳11—Officer has no property or contract rights in office, and holds subject to revocation at will.**

    An army officer has no property right or contract right in his office, and the office he holds is revocable by the sovereignty at will.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. United States ⟨⟩28—President's duty may be delegated to department heads, unless exercise of power expressly or impliedly made judicial.**

The President, as commander-in-chief of the army and navy is vested with wide administrative and executive powers, and unless the exercise thereof is made judicial by express provision of statute, or is such by clear implication, authority may be given by the President to the proper head of a department to act for him and in his name, especially in view of Rev. St. § 216 (Comp. St. § 318), relative to the duties of the Secretary of War.

**7. Army and navy ⟨⟩12—Order discharging officer must be vacated before mandamus lies to compel reinstatement.**

An order discharging an army officer receiving an unfavorable classification under National Defense Act, § 24b, whether made personally by the President or by the Secretary of War under delegated authority, is an order of the President, and must be vacated as a condition precedent to the reinstatement of the officer by mandamus.

**8. Mandamus ⟨⟩64—Will not lie to compel vacation of order discharging army officer.**

Mandamus will not lie to compel the vacation of an order of the Secretary of War, under authority delegated to him by the President, discharging an army officer receiving an unfavorable classification under National Defense Act, § 24b, as the executive and administrative action of the President cannot be controlled by mandamus.

Appeal from the Supreme Court of the District of Columbia.

Mandamus by the United States, on the relation of William P. Creary, against Newton D. Baker, Secretary of War, in which John W. Weeks, his successor as Secretary of War, was substituted as defendant. From a judgment for the relator, defendant appeals. Reversed and remanded.

John E. Laskey and Peyton Gordon, both of Washington, D. C., Frederick M. Brown, of New York City, and L. H. Vandoren, of Washington, D. C., for appellant.

E. S. Bailey, S. T. Ansell, and T. T. Ansberry, all of Washington, D. C., for appellee.

VAN ORSDEL, Associate Justice. Relator Creary filed a petition in the Supreme Court of the District of Columbia for a writ of mandamus to compel respondent, Newton D. Baker, Secretary of War, to vacate an order discharging the relator from the army of the United States and to restore him to the rank of colonel. A rule to show cause was issued. Respondent answered the petition, and the relator demurred to the answer. Later, present respondent, John W. Weeks, Secretary of War, was substituted for Baker. From a judgment for relator, the case comes here on appeal.

The controversy involves the construction of section 24b of the National Defense Act of June 4, 1920, 41 Stat. 759, 773. The material portions of the section read as follows:

"Immediately upon the passage of this act, and in September of 1921 and every year thereafter, the President shall convene a board of not less than five general officers, which shall arrange all officers in two classes, namely: Class A, consisting of officers who should be retained in the service, and class B, of

officers who should not be retained in the service. Until otherwise finally classified, all officers shall be regarded as belonging to class A, and shall be promoted according to the provisions of this act to fill any vacancies which may occur prior to such final classification. No officer shall be finally classified in class B until he shall have been given an opportunity to appear before a court of inquiry. In such court of inquiry he shall be furnished with a full copy of the official records upon which the proposed classification is based and shall be given an opportunity to present testimony in his own behalf. The record of such court of inquiry shall be forwarded to the final classification board for reconsideration of the case, and after such consideration the finding of said classification board shall be final and not subject to further revision except upon the order of the President. Whenever an officer is placed in class B, a board of not less than three officers shall be convened to determine whether such classification is due to his neglect, misconduct or avoidable habits. If the finding is affirmative, he shall be discharged from the army; if negative, he shall be placed on the unlimited retired list with pay at the rate of 2½ per centum of his active pay multiplied by the number of complete years of commissioned service, or service which under the provisions of this act is counted as its equivalent, unless his total commissioned service or equivalent service shall be less than ten years, in which case he shall be honorably discharged with one year's pay."

[1] The relator was placed by the classification board in class B, and at his request a court of inquiry was convened, before which he appeared with counsel. Complaint is made that he was not furnished with a full copy of his record in the War Department, but was furnished only with copies of the unfavorable parts of his record. He was, however, permitted to examine all original records in the presence of the court while in session. No objection was interposed by him or his counsel to the proceedings before the court of inquiry; hence it is too late to raise objection now.

The record of the court of inquiry was then sent to the classification board, which placed relator in class B. Following his final classification, a board of officers (referred to as the "Honest and Faithful Board") was convened, as provided in the act, to determine the cause of such classification. The board held that relator's classification was due to his own neglect, misconduct, or avoidable habits, and he was accordingly discharged from the army.

[2] We think the statute is not difficult of construction, since it expressly provides that the record made by the court of inquiry shall be reviewed by the classification board for the purpose of the final determination of the class to which the officer belongs. There is nothing in the statute, however, which provides that the Honest and Faithful Board, convened for the determination of "whether such classification is due to his neglect, misconduct or avoidable habits," shall be confined to the record made before the court of inquiry. The duty of the Final Classification Board is to determine the general classification to which the officer belongs, while the duty imposed upon the Honest and Faithful Board is to ascertain, as a basis for his retirement from the service, whether or not the disqualification resulted from the officer's own misconduct or from causes over which he had no control. Therefore the record made before the court of inquiry might or might not contain material pertinent to the investigation which the statute imposes upon the Honest and Faithful Board.

Objection is made that relator was not given notice of the hearing before the Honest and Faithful Board, or an opportunity afforded him to be heard personally and by counsel in his own defense. It also appears that one member of the board had formerly sat as a member of an administrative board which had classified relator as a "misfit" for the duties which he was then performing. It is therefore urged that through lack of notice he was deprived of an opportunity to take exception to the personnel of the board.

But this contention may be laid aside, since, in our view, the case turns upon a question of jurisdiction. Upon the following order relator was dismissed from the army:

"The action of the classification board in finally classifying Col. William F. Creary, Infantry, in class B is approved by the President, and by his direction, a board of officers having determined that such classification is due to the officer's neglect, misconduct, and avoidable habits, Col. Creary is discharged from the service under the provisions of section 24b of the act of Congress approved June 4, 1920. [Signed] W. R. Williams, Assistant Secretary of War."

[3] It appears that this order was made under authority of a general order of the President authorizing the Secretary of War to take such action in the name of the President as might be necessary in carrying out the provisions of the statute in respect of the classification and retirement or discharge of officers thereunder. The question which at once suggests itself is whether the authority conferred by the statute upon the President is such that it could be legally delegated to the Secretary of War. It is well settled that, where the duty imposed upon the President is judicial in character, it may not be delegated away. Runkle v. United States, 122 U. S. 543, 7 Sup. Ct. 1141, 30 L. Ed. 1167.

In that case, the appeal was from a judgment of the Court of Claims in a suit for longevity pay as an officer in the United States army. The case turned upon the legality of Runkle's discharge from the service, where the President had failed to review the court-martial proceedings. The duty of the President to review court-martial proceedings was the principal question before the court. It was held to be a judicial function, expressly imposed by statute, and, as such, could not be delegated away. A court-martial is defined in the opinion of the court as follows:

"A court-martial organized under the laws of the United States is a court of special and limited jurisdiction. It is called into existence for a special purpose and to perform a particular duty. When the object of its creation has been accomplished it is dissolved. * * * Their authority is statutory, and the statute under which they proceed must be followed throughout. The facts necessary to show their jurisdiction, and that their sentences were conformable to law, must be stated positively, and it is not enough that they may be inferred argumentatively."

It follows, therefore, that proceedings in court-martial are judicial in character.

True, in the Runkle Case, as here, the order involved the dismissal of an officer from the army. But there the statute expressly provided that—

No "sentence of a general court-martial, in the time of peace, extending to the loss of life, or the dismission of a commissioned officer, or which shall, either in time of peace or war, respect a general officer, be carried into execution, until after the whole proceedings shall have been transmitted to the Secretary of War, to be laid before the President of the United States, for his confirmation or disapproval, and orders, in the case."

The officer was court-martialed for misconduct, convicted, and, as a penalty, dismissed from the service. The proceedings related to the discipline of the army.

[4, 5] Here we are dealing with a general act of Congress for the reorganization of the army, and the proceedings relate to the classification of the officers—those classified in class A to be retained, and those classified in class B to be retired or dismissed according to the cause of unfitness. The proceedings are purely administrative, and do not partake in any sense of a judicial character. Relator has no property right in the office to which he seeks reinstatement, Taylor and Marshall v. Beckham, 178 U. S. 548, 20 Sup. Ct. 890, 1009, 44 L. Ed. 1187; no contract right is involved, Butler v. Pennsylvania, 10 How. 402, 13 L. Ed. 472; and the office he held was revocable by the sovereignty at will, Crenshaw v. United States, 134 U. S. 99, 10 Sup. Ct. 431, 33 L. Ed. 825. In other words, the relator's rights are measured by the statute. Reaves v. Ainsworth, 219 U. S. 296, 31 Sup. Ct. 230, 55 L. Ed. 225; Ex parte Garland, 4 Wall. 333, 378, 18 L. Ed. 366.

[6] The President, as commander-in-chief of the army and navy, is vested with wide administrative and executive power, and, unless the exercise thereof is made judicial by express provision of statute, or is such by clear implication, authority may be given by the President to the proper head of a department to act for him and in his name. The power of the President to delegate authority to the Secretary of War in military affairs is expressed in section 216, R. S. (Comp. St. § 318), as follows:

"The Secretary of War shall perform such duties as shall from time to time be enjoined on or intrusted to him by the President relative to military commissions, the military forces, the warlike stores of the United States, or to other matters respecting military affairs; and he shall conduct the business of the department in such manner as the President shall direct."

This implies authority in the President to impose upon the Secretary of War the administration in his name or by his order of much of the general executive power reposed in him as commander-in-chief of the army. The limitation upon the power of the President to so delegate his authority in administrative military affairs seems to extend only to those cases where he is expressly or by clear implication required by statute to act in his individual official capacity.

Nothing in the present statute relating to the classification of officers imposes a judicial duty upon the President to review the findings of the final classification board or personally to issue the order of approval or disapproval. The duty is purely executive, and can be performed lawfully by the Secretary of War. As was said in the Runkle Case:

"There can be no doubt that the President, in the exercise of his executive power under the Constitution, may act through the head of the appropriate executive department. The heads of departments are his authorized assistants in the performance of his executive duties, and their official acts, promulgated in the regular course of business, are presumptively his acts. That has been many times decided by this court. Wilcox v. Jackson, 13 Pet. 498, 513: United States v. Eliason, 16 Pet. 291, 302; Confiscation Cases, 20 Wall. 92, 109; United States v. Farden, 99 U. S. 10, 19; Wolsey v. Chapman, 101 U. S. 755, 769."

[7, 8] The President may, of course, perform this function personally, or, as in this instance, he may delegate it to the Secretary of War. But, in either case, it is an administrative order of the President, and, as such, must be vacated as a condition precedent to reinstatement under the writ. But this cannot be accomplished in this proceeding, since the executive and administrative action of the President cannot be controlled by mandamus. In Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 60, it was held that the writ of mandamus may issue against the heads of departments to compel the performance of a purely ministerial act, not involving judgment or discretion; but this case has been generally construed as holding that courts have no jurisdiction to compel the President by mandamus to perform even a purely ministerial act incidental to his office.

In Mississippi v. Johnson, 4 Wall. 475, 18 L. Ed. 437, where the state of Mississippi sought by injunction to restrain President Johnson from the execution of the Reconstruction Acts of Congress, upon the ground that they were unconstitutional, the court clearly declared that it was without jurisdiction either to compel the execution of a constitutional law by the President, or to restrain him from executing unconstitutional legislation. The reason for the refusal of the court to exercise the power was stated in the opinion as follows:

"Suppose the bill filed and the injunction prayed for allowed. If the President refuse obedience, it is needless to observe that the court is without power to enforce its process. If, on the other hand, the President complies with the order of the court and refuses to execute the acts of Congress, is it not clear that a collision may occur between the executive and legislative departments of the government? May not the House of Representatives impeach the President for such refusal? And in that case could this court interfere, in behalf of the President, thus endangered by compliance with its mandate, and restrain by injunction the Senate of the United States from sitting as a court of impeachment? Would the strange spectacle be offered to the public world of an attempt by this court to arrest proceedings in that court?"

Since, therefore, we are without jurisdiction to compel the vacation of the order of dismissal from the service, the reinstatement of relator cannot be accomplished in this proceeding. Of course, if it is apparent that injustice has been done, the power lies with the President, upon the petition of the relator, to vacate the order and direct a rehearing by the final classification board. The courts, however, are powerless to compel such action.

The judgment is reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.