**UNITED STATES, Appellee,**

v.

**Captain Robert L. WOODS,**
**002–44–3418, United States**
**Army, Appellant.**

**CM 446894.**

U.S. Army Court of Military Review.

10 Feb. 1986.

---

For Appellant: Captain Joseph Tauber, JAGC (argued); Colonel Brooks B. La Grua, JAGC, Lieutenant Colonel Arthur L. Hunt, JAGC, Major Stephen R. Dooley, JAGC (on brief).

For Appellee: Captain Howard G. Cooley, JAGC (argued); Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Joseph A. Rehyansky, JAGC (on brief).

Before RABY, CARMICHAEL, and ROBBLEE Appellate Military Judges.

## OPINION OF THE COURT

RABY, Senior Judge:

Appellant was convicted of drunk and reckless driving and of involuntary manslaughter, in violation of Articles 111 and 119, Uniform Code of Military Justice [hereinafter cited as UCMJ], 10 U.S.C. §§ 911 and 919 (1982), respectively.[1]

## I. THE EFFECT OF ADMINISTRATIVE SEPARATION ON COURT–MARTIAL JURISDICTION

### A. Allegation and Facts

Appellant asserts that his discharge under other than honorable conditions, pursuant to his resignation for the good of the service, abated the court-martial proceedings in the case at bar.

The record reflects that charges were preferred against appellant on 22 August 1984. On 9 November 1984, he submitted his resignation for the good of the service under the provisions of Army Regulation 635–120, Chap. 5—Resignation for the Good of the Service.[2] On 11 December 1984, appellant was duly tried and convicted by general court-martial.[3] He was sentenced to be dismissed from the Army and to be confined for seven months. On 12 December 1984, the appellant's sentence to confinement was deferred. On 7 February 1985, the general court-martial convening authority approved appellant's sentence, and except for the dismissal, ordered it into execution. That same day, the general court-martial convening authority forwarded appellant's tender of resignation to Headquarters, Department of the Army, and recommended its disapproval. On 2 April 1985, the Deputy Assistant Secretary (Department of the Army Review Boards, Personnel Security and Equal Employment Opportunity Compliance and Complaints Review), Office of the Assistant Secretary of the Army (Manpower and Reserve Affairs) [hereinafter referred to as the Deputy Assistant Secretary], presumptively acting pursuant to delegated Secretarial authority, approved the recommendation of the Army Ad Hoc Review Board that "the

1. The offenses to which appellant pled guilty are as hereinafter pertinently described:

 [Article 111] ... did at Buedingen, Federal Republic of Germany, on or about 21 July 1984, on highway number B457 in the vicinity of marker 0521.2, operate a vehicle, to-wit: a passenger car, while drunk, and in a reckless manner by driving at a high rate of speed and in excess of the speed limit and by passing another vehicle on a curve and in a no-passing zone.... (In an attempt to avoid multiplicity for finding with the offense of involuntary manslaughter, the words "and did thereby kill Iris Graul" were excised from this specification).

 [Article 119] ... did, at Buedingen, Federal Republic of Germany, on or about 21 July 1984, by culpable negligence unlawfully kill Iris Graul by operating a vehicle to-wit: a passenger car, while drunk and in a reckless manner by driving at·a high rate of speed and in excess of the speed limit and by passing another vehicle on a curve and in a no passing zone, and did thereby cause said vehicle to collide with the passenger car operated by the said Iris Graul....

2. Army Regulation 635–120, Personnel Separations: Officer Resignations and Discharges [hereinafter cited as AR 635–120] (amended by Change 16, 1 Sep. 1982).

3. Pursuant to AR 635–120, para. 5–1b, "tender of resignation for the good of the service does not preclude or suspend disciplinary proceedings in a case. Whether such proceedings will be held in abeyance pending final action on [such] a resignation ... is a matter to be determined by the commander exercising general court-martial jurisdiction over the officer concerned."

resignation for the good of the service" tendered by appellant be accepted with discharge under other than honorable conditions. Appellant was administratively discharged from the United States Army with an Other Than Honorable Discharge Certificate on 24 May 1985.

B. Secretarial Authority to Tender an Administrative Discharge

■ Military officers serve at the pleasure of the President, and they have no right either to be promoted or to be retained in the service. *Pauls v. Secretary of Air Force,* 457 F.2d 294, 297 (1st Cir. 1972), and cases cited therein.

Congress has provided express statutory authority to both the President, 10 U.S.C. § 121 (1982), and to the Secretary of the Army, 10 U.S.C. § 3012(g) (1982); *see also* 10 U.S.C. § 280 (1982); 5 U.S.C. § 301 (1982), to enable them to carry out their "functions, powers and duties" under Title 10, United States Code. The Secretary of the Army, as head of the Department of the Army, is responsible for many statutory functions[4] including the "functions necessary or appropriate for the ... administration ... welfare, preparedness and effectiveness of the Army...." 10 U.S.C. § 3012(a) and (b)(1) (1982).

Pursuant to this broad statutory authority, the Secretary has promulgated AR 635–120 for the purpose of prescribing "procedures whereby an officer on active duty may tender his resignation or be discharged and whereby officers on active duty or retired officers may be dropped from the rolls of the Army." AR 635–120, para. 1–1. Because an officer serves at the pleasure of the President, no vested right exists to have a tendered resignation accepted, and unless the Secretary or his delegate in the exercise of their discretion elect to accept the resignation, the officer

is obliged to continue to serve in office until such time as this status is otherwise terminated by operation of law. In fact, AR 635–120, para 1–3d, expressly states that "Headquarters, Department of the Army, may properly refuse to accept a resignation when ... [t]he officer is ... awaiting results of trial...."

A resignation is a serious personnel matter that has numerous legal ramifications regarding the future rights of both the Army and the officer concerned. Accordingly, a resignation must comply fully with the format and procedural requirements of applicable regulations. *See generally* AR 635–120, Chap. 2—Administrative Procedures. Once submitted, a resignation may be withdrawn "only with the approval of Headquarters, Department of the Army, except that ... (2) A resignation for the good of the Service (Chap. 5) may be withdrawn if the officer's trial results in an acquittal or a sentence less than dismissal." AR 635–120, para. 2–4b(2). This provision has two distinct purposes: first, to ensure that departmental action can be taken on all tendered resignations except those expressly exempted by the limited withdrawal rule; and, secondly, to allow an officer to withdraw a resignation for the good of the service if he subsequently is acquitted or given a sentence which does not include dishonorable separation (dismissal) from the service. No other benefits are conveyed or were intended to be conveyed to the resigning officer by this regulatory subparagraph.

A resignation when accepted will result in appropriate action being taken to terminate any appointments (e.g., commissions) which the officer may hold, thereby terminating his military status. *See* AR 635–120, para. 1–4. However, under certain circumstances, an officer whose military

---

4. 10 U.S.C. § 3012 does not purport to list all of the Secretary of the Army's "functions, powers and duties." For example, as alter ego of the President exercising both constitutional and statutory powers of office, the Secretary of the Army has certain implied and inherent powers of office. *Dunmar v. Ailes,* 348 F.2d 51 (D.C.Cir. 1965). *Cf. United States v. Eliason,* 41 U.S. 291,

301, 10 L.Ed. 968 (1842) ("The secretary of war is the regular constitutional organ of the president, for the administration of the military establishment of the nation; and rules and orders publicly promulged [sic] through him must be received as the acts of the executive, and as such, be binding upon all within the sphere of his legal and constitutional authority.").

status is terminated by the acceptance of his resignation may incur a military service obligation. AR 635–120, para. 1–5. Upon official acceptance of the resignation an appropriate discharge certificate is duly tendered at the time of the officer's separation from the service. AR 635–120, paras. 1–3, 5–7.

Army Regulation 635–120 expressly provides that exceptions to its provisions can be made at the departmental level "on an individual basis in cases of extreme compassionate circumstances or *when such action is deemed to be in the best interest of the officer and the Army.*" AR 635–120, para. 1–3f (emphasis added).[5] Because this exception is contained within a lawfully promulgated departmental regulation, an officer is on notice of its contents. *Rosner v. Sec. of Health, Education and Welfare,* 306 F.Supp. 853, 855 (S.D.Fla.1970) ("Parties dealing with the Government are charged with knowledge of and are bound by statutes and lawfully promulgated regulations despite reliance to their pecuniary detriment upon incorrect information received from government agents or employees."); *Flamm v. Ribicoff,* 203 F.Supp. 507, 510 (S.D.N.Y.1961).

Based on the above facts and law, we conclude that appellant was duly separated from the service pursuant to the exercise of statutorily-based, Secretarial administrative authority.

### C. *Stare Decisis*

In support of his argument that the case should be abated, appellant relies upon the efficacy of this court's holding in *United States v. Gwaltney,* 43 C.M.R. 536 (A.C.M.R.1970), *aff'd,* 43 C.M.R. 328 (C.M.A.1971).

We recognize that the doctrine of *stare decisis* "is a salutary one, and should not ordinarily be departed from, where the decision is of long standing and rights have

been acquired under it, unless considerations of public policy demand it." *Colonial Trust Co. v. Flanagan,* 344 Pa. 556, 25 A.2d 728, 730 (1942), *citing Hoyt v. Martense,* 16 N.Y. 231 (1857). However, the "rule is not inflexible nor is it of such nature as to require perpetuation of error or illogic," and "when a theory supporting a rule of law is not grounded on facts, or upon sound logic, or is unjust, or has been discredited by actual experience, it should be discarded, and with it the rule it supports." *D & W Auto Supply v. Department of Revenue,* 602 S.W.2d 420, 424 (Ky.1980).

### D. The Evolution of Pertinent Precedent

An examination of the cases pertaining to the above issue reflects that neither the *Gwaltney* decision nor the one unreported case of this court purporting to follow *Gwaltney* is based on long-standing precedent. The law in this area has developed amidst a background of controversy and confusion as initially reflected in two early opinions of The Judge Advocate General of the Army and an appellate decision of the Air Force Board of Review.

In a Memorandum for the Under Secretary of War attached to the case of *United States v. Iacovazzi and Brogan,* 60 B.R. 155, 168, CM 307048 (A.B.R.1946), The Judge Advocate General of the Army expressed the following views, apparently as a matter of first impression and without benefit of a citation of supporting legal authority:

> The *administrative separation* from the service of Lieutenant Brogan, under honorable conditions and prior to final action on the sentence, *amounted to an implied remission of his sentence and the proceedings,* which have not as yet been promulgated by a general court-martial

---

5. While this exception obviously is limited in scope, an examination of past administrative practices in the Army would reveal that this provision has been construed on occasion to provide substantial authority to the Department

of the Army to deviate from the regulatory strictures of AR 635–120. We believe that regulatory exceptions, in the Army's best interest, lawfully can occur under this provision even

order, should be treated as abated in the Brogan case.[6]

(Emphasis and footnote added.)

In an indorsement transmitting the record of trial and the Army Board of Review's opinion in *United States v. Murray,* 62 BR 35, 39, CM 312219 (A.B.R.1946), The Judge Advocate General stated the following:

[A]ccused was released from active duty and separated from the service ... following his trial but pending final action on the sentence. The Board expresses the opinion that the release of accused from active duty *effected constructive or implied remission of the sentence* previously adjudged and that the sentence may not now legally be carried into execution. I concur in that opinion and recommend that the proceedings *be treated* as having been abated....

(Emphasis added.)

Thus, this more carefully crafted indorsement confirms that The Judge Advocate General's initial views were that the mere administrative separation of an officer legally constituted a constructive or implied remission of the sentence, and that as a matter of policy only, the entire court-martial should be abated.

In *United States v. Santiago,* 15 C.M.R. 781 (A.F.B.R.1954), the facts reflect that Captain Santiago, a reserve officer on extended active duty, was tried by court-martial. However, prior to the action of the convening authority and the ordering of his sentence into execution, Captain Santiago was released from active duty and furnished with a certificate of service certifying honorable service on active duty. The Air Force Board of Review set aside the findings and sentence in Captain Santiago's case, stating:

From all of the foregoing [*Brogan, Murray* and other assorted precedent], it appears to be a well-settled rule that the *release from active duty* of an officer, *under honorable conditions, prior to the execution of a sentence* adjudged against him by court-martial, *constitutes a remission of the unexecuted portions of the sentence....* Since the accused's release from active duty under honorable conditions had effectively remitted the sentence adjudged against him, there remained no sentence upon which the convening authority could properly take action. Accordingly, *his action in approving the findings and sentence was without legal efficacy.*

*United States v. Santiago,* 15 C.M.R. at 783–84 (emphasis added and footnote omitted). Thus, the *Santiago* opinion appears to be the only appellate opinion holding that a so-called (constructive or implied) remission of an unexecuted court-martial sentence would also operate by law to prevent the approval of the court-martial findings.[7]

In *United States v. Sippel,* 15 C.M.R. 50 (C.M.A.1954), Colonel Sippel had been tried by court-martial and his conviction approved by the convening authority and affirmed by the Air Force Board of Review. While Colonel Sippel's petition for review was pending before the United States Court of Military Appeals [hereinafter referred to as Court of Military Appeals], his commission as an officer expired by operation of law; however, no written orders of separation, discharge, or release from ac-

---

though the deviation would only remotely be in the best interests of the officer.

**6.** It appears, from a careful examination of this quotation's syntax, that through inadvertence a comma is missing after the words "his sentence". If so, the passage pertinently should read, "remission of his sentence, and the proceedings, which have not...." The omission of such a comma is critical to an interpretation of these remarks. Thus, it is unclear whether The Judge Advocate General actually opined, in this instance, that Lieutenant Brogan's administra-

tive discharge constituted an implied remission of only the court-martial sentence or of both the sentence and the entire proceedings of the court.

**7.** In any event, the Board in *Santiago* appears to have limited the scope of its opinion to those factual situations in which the officer was separated both under honorable conditions and prior to the execution of the court-martial sentence. *United States v. Santiago,* 15 C.M.R. at 783–84 and n. 1 thereto.

tive duty were tendered to him. The Court of Military Appeals, in an opinion written by Judge Latimer with Judge Brosman concurring, held that:

[J]urisdiction once acquired is not lost by a change in the status of a defendant. . . .

\* \* \* \* \* \*

[W]e conclude that the *jurisdiction* of military tribunals over the accused attached while he was subject to military law; that it *was not divested by his separation from the service;* and that appellate proceedings may be continued to their legitimate end.

*United States v. Sippel,* 15 C.M.R. at 53–54 (emphasis added). The lone dissenter, Judge Quinn, addressed his judicial concerns to other aspects of the court's opinion. *United States v. Sippel,* 15 C.M.R. at 61.

In *United States v. Speller,* 24 C.M.R. 173 (C.M.A.1957), the Court of Military Appeals was confronted with the situation of an Air Force aviation cadet who had been duly tried and convicted by court-martial; however, before any action was taken by the convening authority, orders were issued releasing him from active duty and transferring him to the Air Force Reserve. The convening authority took action approving the case and forwarded it to The Judge Advocate General of the Air Force for appellate review. After the case was referred to the Board of Review, the convening authority withdrew his original action and substituted a second action which disapproved the findings of guilty of one specification, but approved the remaining findings of guilty and the adjudged sentence. However, because of the cadet's release from active duty, the second action was withdrawn; and, a third was taken which, in effect, approved all the findings of guilty, except the one specification of guilty previously disapproved, and which approved no part of the sentence. In concluding that the Board of Review was correct in affirming the findings of guilty in Cadet Speller's case, the Court of Military Appeals, after citing *Sippel* as dispositive,

concluded that the Board of Review had jurisdiction to complete appellate review and that the method by which an appellant's military status is changed makes no difference when dealing with the validity of the post-trial proceedings. *United States v. Speller,* 24 C.M.R. at 176–177. The majority of the court, Judge Latimer with Judge Ferguson concurring, held that:

It appears that the foregoing authorities overwhelmingly support the rule of continuing jurisdiction when the change is by operation of law, and that leaves for discussion the question of whether a different rule should be applied when an enlisted man has been released from active duty honorably. . . . However, conceptually there should be no difference unless some theory of estoppel can be applied. . . . But, even assuming such a doctrine should be made applicable, it would only bar proceedings subsequent to the date of discharge and not those which had been completed prior thereto. . . . After findings and sentence, the case enters review channels, and certainly appellate processes should be permitted to take their normal course. . . .

\* \* \* \* \* \*

While it is true that when a serviceman's relationship with the military service has been terminated and he reverts to his civilian status, the service to which he belonged has lost jurisdiction to initiate criminal proceedings against him, it does not follow that matters in the process of appeal must be dismissed. . . . That is what *Toth v. Quarles,* 350 US 11 [76 S.Ct. 1, 100 L.Ed. 8 (1955) ] . . . holds. . . . *But that is not to say that once an accused is tried and convicted by a court-martial which had jurisdiction, his reversion to a civilian status sets aside his conviction. . . .*

\* \* \* \* \* \*

Our attention has been directed to the fact that an Air Force board of review in . . . *United States v. Santiago,* 15 CMR 781, reached a conclusion contrary to the one we announce. . . .

\* \* \* \* \* \*

With due respect to the opinion of that board, we just do not follow the reasoning. Assuming, for the sake of argument, that a sentence cannot be satisfied because of the action of military authorities, that has nothing to do with the legality of the findings or any part of the sentence which has been satisfied.... Sentence is severable from findings.... Therefore, it just seems legally incorrect to hold that a release from active duty of a serviceman after findings and sentence, but prior to the time execution of a sentence can be effectuated, strikes from the record all that has gone before. *It seems more logical ... that once findings are returned and sentence imposed ... any action taken thereafter which merely affects the execution of the sentence does not affect the legality of the conviction.* In *United States v. Blue,* 3 USCMA 550, 13 CMR 106, we took that view, for we affirmed a finding and directed reassessment of sentence, well knowing the accused there had been returned to a civilian status.

*United States v. Speller,* 24 C.M.R. at 177–179 (emphasis added). The court further concluded that the Board of Review was correct in holding that, although there was no sentence before it upon which it could effectively take action, it could nevertheless affirm the approved findings of guilty. *United States v. Speller,* 24 C.M.R. at 179. In dissent, Chief Judge Quinn stated his view that the Air Force could not "affirmatively discharge a person 'under honorable conditions' and then turn around and give him a punitive discharge." *Id.* Chief Judge Quinn's view was based upon his belief that "[a] final separation [of a servicemember] from the service ends court-martial jurisdiction" under the rule established by *Toth v. Quarles,* 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955).[8] *Id.* at 180. Thus, to him, the issue was whether the principle of continuing jurisdiction takes precedence over loss of jurisdiction by affirmative discharge. Judge Quinn, after disagreeing with the majority's interpretation of *Carter v. McClaughry,* 183 U.S.

---

8. Compare Chief Judge Quinn's reliance on the *Toth* case in *United States v. Speller,* 24 CMR at 180, with the majority's interpretation of *Toth,* 24 CMR at 178. The majority appears to construe *Toth* as only precluding a service from *initiating* criminal proceedings against an individual over whom jurisdiction has been lost due to a termination of the individual's relationship with the military service. We need not concern ourselves with whether a convening authority could refer a former servicemember to trial by court-martial after his separation from the service on the basis that jurisdiction had already attached (for example, through the active criminal investigation or the preferral of charges against the individual) before his separation became administratively final. Nor need we concern ourselves with whether the government could, following the adjournment of such a trial, continue to process the case through completion of the review process. Compare *United States v. Speller,* 24 C.M.R. 173, with *United States v. Howard,* 20 M.J. 353 (CMA 1985) (*in personam* jurisdiction was lost when accused was discharged before the unit was notified that he was being investigated by the Criminal Investigation Command for violating the UCMJ). In the case at bar, appellant was tried, convicted and his adjudged sentence, except for the dismissal, had been lawfully ordered into execution by the convening authority—all of these events occurring before he was separated administratively. In *Toth v. Quarles,* 350 U.S. 11,

23, 76 S.Ct. 1, 8, 100 L.Ed. 8 (1955), the United States Supreme Court held:

> Congress cannot subject civilians ... *to trial* by court-martial. They, like other civilians, are entitled to have the benefit of safeguards afforded those *tried* in the regular courts authorized by Article III of the Constitution.

(Emphasis added.) *See also* the repeated references to "trials" in the text of the *Toth* opinion. *Toth v. Quarles,* 350 U.S. at 14, 15, 21–22, 76 S.Ct. at 3, 4, 7–8. We are, thus, satisfied that, under its most reasonable interpretation, *Toth* does not preclude a service from completing appellate review and taking final action in the case of a former servicemember who was, in fact, not separated from the service until after he was found guilty of an offense under the UCMJ.

Moreover, in view of the many positive changes made in the military justice system in the last 36 years, including recent legislation which makes decisions of the Court of Military Appeals subject to review by the United States Supreme Court by writ of certiorari, 10 U.S.C. § 867(h)(1) and (h)(2) (Supp. I 1983), we believe that our military trial and appellate courts now "are equally as capable as the [other] federal courts to protect a person's constitutional rights." *Hodges v. Brown,* 500 F.Supp. 25, 29 (E.D.Pa.1980), *aff'd,* 649 F.2d 859 (3d Cir.1981).

365, 22 S.Ct. 181, 46 L.Ed. 236 (1902),[9] and after distinguishing the pertinent cases cited therein, concluded that the principle of continuing jurisdiction does not take precedence; and, that jurisdiction is lost because a separation from the service "does operate to divest the military of all control and custody over the person" and restores the person unqualifiedly to the "status and capacity of a civilian." *United States v. Speller*, 24 C.M.R. at 182.

In *United States v. Robertson*, 24 C.M.R. 231 (CMA 1957), the Court of Military Appeals, with Chief Judge Quinn remaining in dissent, applied *Speller* to dispose of a jurisdiction issue raised when a convening authority took action in a reserve officer's case even though the officer had been released from active duty under honorable conditions during the interval between his trial and the convening authority's action. The court stated that the case of *United States v. Speller*, 24 C.M.R. 173, was dispositive of the issue, and reasserted its holding that "once court-martial jurisdiction attaches, it continues until appellate processes are completed, despite the accused's intervening *honorable separation* from active duty." *United States v. Robertson*, 24 C.M.R. at 233 (emphasis added).

In *United States v. Keeler*, 27 C.M.R. 393 (C.M.A.1959), the Judge Advocate General of the Air Force certified the issue of whether the Board of Review was correct in dismissing charges against the accused because the specifications failed to allege an offense. Airman Keeler was separated from the service, apparently administratively, before the appellate process in his case was complete. Judge Ferguson wrote the lead opinion of the court addressing the merits of the certified issue and affirming the Board of Review's decision.[10] Chief

Judge Quinn, citing his dissent in *Speller*, joined in affirming the dismissal of the charge on the sole ground that "the accused's separation from the service *by affirmative action* terminated the proceedings". *United States v. Keeler*, 27 C.M.R. at 395 (Quinn, C.J., concurring) (emphasis added). Judge Latimer, in dissent, addressed the merits of the issue and would have reversed the decision of the Board of Review; however, he also addressed the jurisdiction question simply with a recitation of such authorities as *Sippel, Speller,* and *Robertson.*

In *United States v. Scott*, 29 C.M.R. 462 (C.M.A.1960), the accused had been ordered to be administratively discharged for unfitness before expiration of his term of service. Although military regulations prescribed that the discharge would not become effective until midnight *on the day* on which it was delivered, Scott was tendered his discharge earlier in the day. After receiving his discharge certificate, the accused signed out of, but did not depart, his unit area. Subsequently, a theft was discovered to which the accused confessed. His discharge was revoked and he was ultimately tried by court-martial and convicted. The majority of the court, Judge Ferguson authoring the opinion and Chief Judge Quinn joining therein, held that "[j]urisdiction to try the accused depends upon whether he was in the Air Force *at the time of the commencement of the proceedings* against him." *United States v. Scott*, 29 at C.M.R. 463 (emphasis added). The court concluded that "one's military service, with the concomitant *jurisdiction to try him* by court-martial, ends with the delivery to him of a valid discharge certificate.... Accordingly, it appears that the

**9.** In *Carter v. McClaughry*, 183 U.S. at 383, 22 S.Ct. at 188, the United States Supreme Court opined:

> The accused was proceeded against as an officer of the Army, and jurisdiction attached in respect of him as such, which included not only the power to hear and determine the case, but the power to execute and enforce the sentence of the law. Having being sentenced, his status was that of a military prisoner....

> He was a military prisoner though he had ceased to be a soldier; and for offenses committed during his confinement he was liable to trial and punishment by court martial under the rules and articles of war.

**10.** We surmise that Judge Ferguson believed the court was required by law to address the certified issue without regard to the question of jurisdiction.

accused was not a person subject to the Code at the time of his offense and trial...." *United States v. Scott,* 29 C.M.R. at 464 (emphasis added).[11] Judge Latimer dissented, asserting that pursuant to 10 U.S.C. § 8811(b)(1), the accused could only be discharged early in accordance with the provisions of applicable Secretarial regulations. Thus, he believed the accused's discharge was not final until midnight and could be revoked, as was done, before such time. *United States v. Scott,* 29 C.M.R. at 465–66 (Latimer, J., dissenting).

In *United States v. Loughery,* 30 C.M.R. 260 (C.M.A.1961), Judge Ferguson authored an opinion, in which both Chief Judge Quinn and Judge Latimer joined, ordering the charges dismissed against the accused. Sergeant Loughery had been duly tried by special court-martial; convening authority action had been taken in his case; and his case had been affirmed by the Board of Review. Following his petition for review to the Court of Military Appeals and the court's grant of review, Sergeant Loughery submitted a request for remission of his punitive discharge and for separation from the service on the grounds of hardship. Sergeant Loughery's punitive discharge was remitted by the Secretary of the Navy and he was administratively separated from the Marine Corps. In the court's opinion, Judge Ferguson concluded that prejudicial error existed requiring case reversal.[12] The opinion also reflected that Chief Judge Quinn adhered to his views that the proceedings had been abated, as

expressed in *Robertson* and *Speller,* and that Judge Latimer was of the separate opinion "that the ends of justice would best be served *by dismissal of the petition for review,* for ... the rights of the parties were fixed by their mutual agreement and should not be changed by our disposition." *United States v. Loughery,* 30 C.M.R. at 261 (emphasis added).[13]

*United States v. Entner,* 36 C.M.R. 62 (C.M.A.1965), held that the administrative discharge of a soldier while his case was pending before a Board of Review did not deprive either the Board of Review or the Court of Military Appeals of jurisdiction to complete review. After reaffirming the principle that "[o]nce jurisdiction attaches, it continues until the appellate processes are complete", Judge Ferguson, writing the court's majority opinion in which Judge Kilday joined, stated "[w]e adhere to our previous holding that the *administrative* separation of an individual convicted by court-martial has no effect on the course of his case through *judicial* channels." *Id.* at 62–63 (emphasis added). Chief Judge Quinn dissented, citing his opinions in *Speller* and *Keeler* to support his view that "an administrative discharge abates pending criminal proceedings...." *United States v. Entner,* 36 C.M.R. at 63 (Quinn, C.J., dissenting).

In *United States v. Kuchinsky,* 38 C.M.R. 293 (C.M.A.1968), Warrant Officer Kuchinsky was administratively separated from the service before appellate review was completed. Because of the govern-

---

**11.** This case is interesting because Chief Judge Quinn joined in the majority opinion even though it appears to have interpreted *Toth v. Quarles,* 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8, quite differently than did the Chief Judge in his dissenting opinion in *Speller.*

**12.** Because Judge Ferguson disposed of this case on its merits, it can be inferred that he adhered to the belief that the case need not be abated because Sergeant Loughery was separated from the service after jurisdiction had attached.

**13.** Note that the views of Chief Judge Quinn and Judge Latimer in *Loughery* are available to us only as summarized and reported by Judge Ferguson. The positions taken by Chief Judge Quinn and Judge Ferguson in *Loughery* are not

incompatible with the positions they took in *Speller* and *Robertson.* The position taken by Judge Latimer is somewhat unique, however. Judge Latimer, believing no prejudicial error existed, would have dismissed Sergeant Loughery's petition for review, thereby leaving in effect the Board of Review's decision affirming the findings and sentence. The basis for Judge Latimer's view appears to be that all parties would, as a practical matter, then receive that for which they had bargained. Thus, one could surmise that Judge Latimer's views in this case rested on principles of equity, as he perceived them, and not upon any legal principles which would constitute a retreat from his position in *Speller* and *Robertson.*

ment's delay in complying with the court's mandate, Judge Kilday, with whom Judge Ferguson joined, reversed the Board of Review's decision and ordered the charges and specifications dismissed after concluding that a sentence rehearing at such a late date would only result in the accused's harassment. Their opinion, however, quite clearly assumes that appellate jurisdiction over the case continued. Concurring in the result, Chief Judge Quinn, after citing his opinions in *Speller* and *Entner*, concluded that the appellant's separation abated the proceeding. *United States v. Kuchinsky*, 38 C.M.R. at 297 (Quinn, C.J., concurring).

### E. The Rule Before *Gwaltney*

From the above, certain observations can be made.

From the beginning, the majority of the Court of Military Appeals consistently rejected the theory that an appellant's separation from the service gave rise to a "constructive or implied remission" of a court-martial *proceeding*. Thus, the court's majority never accepted the principles of remission allegedly expressed in *Brogan* and *Murray*, or relied upon by the Air Force Board of Review in *Santiago*. In fact, Chief Judge Quinn, the primary spokesman for the abatement doctrine, carefully attempted to buttress his views on an interpretation of *Toth v. Quarles*. We believe the court was keenly aware of the logical and legal inconsistencies inherent in attempting to bootstrap an *administrative* act of honorable separation into a *judicial* act of remission or abatement—let alone applying such a theory to a situation when an accused was administratively tendered an Other Than Honorable Discharge. In fact, Judge Ferguson, in a manner less than subtle, drew attention to this difference between administrative and judicial proceedings in *Entner*.[14]

As previously indicated, *Toth v. Quarles* does not lend itself to the broad interpreta-

tion given to it by Chief Judge Quinn. Compare the majority's interpretation of *Toth v. Quarles* in *United States v. Speller*, 24 C.M.R. at 178, with that of Chief Judge Quinn in *United States v. Speller*, 24 C.M.R. at 180 (Quinn, C.J., dissenting).

The pattern which emerges from our case analysis is that the majority of the Court of Military Appeals,[15] since *Sippel*, consistently applied the rule of continuing jurisdiction; once jurisdiction attached in the court-martial proceedings, appellate review may thereafter continue, even though in the interim the accused's military status was terminated by his separation pursuant to an administrative discharge.

### F. The *Gwaltney* Decision

In *United States v. Gwaltney*, 43 C.M.R. 536, this court was presented with a situation in which, subsequent to both Chief Warrant Officer (CW2) Gwaltney's trial and the approval of his sentence by the convening authority, the Under Secretary of the Army accepted Gwaltney's tendered resignation and directed that he be issued a general discharge (under honorable conditions). Gwaltney thereafter was administratively discharged as directed. Our court, with one judge concurring in a separate opinion, abated the court-martial proceedings in *toto* and dismissed the charges. The majority of our court, Senior Judge Porcella with whom Judge Bailey joined, after briefly acknowledging the prior decisions of the Court of Military Appeals and our obligation to follow that precedent, opined that:

> [T]he Secretary of the Army and the resignor contemplated that the acceptance of the resignation and resultant separation would be in lieu of conviction and sentence by a court-martial....

Accordingly, we conclude that the Secretary of the Army and the appellant mutually understood that the acceptance of

---

**14.** *See, e.g., United States v. Entner*, 36 C.M.R. at 62: "It is this *administrative* discharge which is urged upon us as ending appellate jurisdiction over the accused, vitiating his conviction, and requiring us to dismiss the *judicial* proceeding against him." (Emphasis in original.)

**15.** This majority included Judges Latimer and Brosman in *Sippel;* Judges Latimer and Ferguson in *Speller* and *Robertson;* and, Judges Ferguson and Kilday in *Entner*.

the resignation would constitute an action in lieu of trial. Under the circumstances, we deem that *the interests of justice* require that the proceedings be abated.[16]

*United States v. Gwaltney*, 43 C.M.R. at 538 (emphasis added) (footnote in original omitted and footnote 16 added).

In a separate concurring opinion, Judge Finklestein stated that this court's power to review cases under Article 66, UCMJ, was limited by the express terms of the statute; that the Secretary of the Army's powers stem either "directly from the Uniform Code of Military Justice or pursuant to the delegated constitutional power of the commander-in-chief [sic]"; that the Secretary's action in administratively discharging CW2 Gwaltney "constitutes disapproval of the dishonorable discharge and served to divest us of jurisdiction under Article 66"; and, that "fairness, equity, and good conscience" dictate that the charges be dismissed. *United States v. Gwaltney*, 43 C.M.R. at 539 (Finklestein, J., concurring).

This case is an anomaly. The majority of our court acknowledged the precedent of the Court of Military Appeals in *Sippel, Speller, Entner*, and *Kuchinsky*, and asserted that they accepted the rationale of those decisions. The majority then attempted to factually distinguish the *Gwaltney* case from those cases, and concluded, allegedly based on factual findings which appear to mirror the "mutual agreement" philosophy attributed to Judge Latimer in *Loughery*, that the proceedings should be abated "in the interests of justice." *United States v. Gwaltney*, 43 C.M.R. at 537–38. Without either following existing Court of Military Appeals precedent or expressly crafting a new rule of law to dispose of an allegedly unique factual situa-

tion, our court proceeded to order the charges dismissed in reliance upon its "inherent power as 'the appellate military tribunal Congress has established to oversee the administration of criminal justice' in the Army." *United States v. Gwaltney*, 43 C.M.R. at 538.

Judge Finklestein's conclusion that the administrative action of the Secretary constituted disapproval of CW2 Gwaltney's dishonorable discharge is without citation to any supporting legal authority. *But cf. United States v. Malanaphy*, 168 F.2d 503, 507 (2d Cir.1948) (An honorable discharge does not operate as a pardon), *rev'd on other grounds sub nom. Hirshberg v. Cooke*, 336 U.S. 210, 69 S.Ct. 530, 93 L.Ed. 621 (1949). This conclusion appears to have resulted from a *sub silentio* embellishment of the discarded theory of "constructive or implied remission of sentence" used in *Brogan, Murray*, and *Santiago*. Judge Finklestein then called for abatement of the proceedings, asserting that that was the only way in which CW2 Gwaltney, in "fairness, equity, and good conscience," could "receive the benefits of his understanding with the Secretary." *United States v. Gwaltney*, 43 C.M.R. at 539 (Finklestein, J., concurring).

The Court of Military Appeals affirmed the decision of our court in *Gwaltney. United States v. Gwaltney*, 43 C.M.R. 328 (C.M.A.1971). Judge Darden, with whom Chief Judge Quinn joined, first noted that: "[T]his Court has held, although not unanimously, that a discharge or an accepted resignation does not terminate jurisdiction of the appellate courts." *Id.* at 330, *citing Sippel, Speller, Robertson, Loughery*, and *Entner.* The majority then acknowledged the binding effect of the Court of Military Review's legitimate exercise of its fact-

16. The majority further stated that "we interpret the regulations in conformity with the principle that a trial is neither complete nor a conviction determined until the completion of any review or appellate proceedings." *United States v. Gwaltney*, 43 C.M.R. at 538. We note that since 1 August 1984, the effective date of the Manual for Courts-Martial, United States, 1984 [herein-

after cited as MCM], a court-martial need not have completed appellate review as a prerequisite to qualifying as a prior conviction. "[T]here is a 'conviction' in a court-martial when a sentence has been adjudged." Rule for Courts-Martial [hereinafter cited as RCM] 1001(b)(3)(A).

finding power and accepted as "sound" the argument that:

> [T]he Court of Military Review *found as a fact* that Gwaltney's resignation resulted from the pending charge and that an agreement existed between the appellee and the Secretary of the Army that acceptance by the latter would "constitute an action in lieu of trial."

*United States v. Gwaltney*, 43 C.M.R. at 330 (emphasis in original). The majority then affirmed our holding in *Gwaltney*, and opined: *"Since the decision* by the Court of Military Review *was* one *within its fact-finding power, we cannot say its decision was incorrect." Id.* at 331 (emphasis added).

Judge Ferguson, concurring in part and dissenting in part, stated:

> I cannot agree that, by labeling an issue of law as a question of fact, this Court's jurisdiction to correct errors of the Court of Military Review may be defeated. That is precisely what has occurred here, and I would reverse the Court of Military Review for that reason. As it, however, acting within its jurisdiction, has obviously found the sentence inappropriate, I would affirm only so much of its action on the record as sets aside the punishment.
>
> \* \* \* \* \* \*
>
> [I]t is this Court's function to determine whether the question is one of law or fact, and labeling it as the latter does not interfere with our authority.

*Id.* at 331. He then observed that in order for the fact-finding power of the Court of Military Review "to limit" the Court of Military Appeals by circumscribing its appellate authority, the finding "must be 'based upon the evidence of record.' " [17]

---

Id. at 332. Judge Ferguson then reviewed the applicable precedent of the court and reaffirmed his long-standing views, as follows:

> First, it is well settled that the acceptance of the resignation and discharge of the accused does not abate the proceedings.... Jurisdiction once attached continues for all purposes until the proceedings involved are terminated by completion of appellate processes and execution of the sentence.... *No exception to this principle*, which we have so clearly and repeatedly enunciated, *has been called to my attention....*
>
> \* \* \* \* \* \*
>
> The Secretary has no power unilaterally to vacate a court-martial conviction.

*Id.* at 332 (emphasis added).

The *Gwaltney* cases are *sui generis*. These decisions do not attempt to overrule or modify existing Court of Military Appeals precedent; rather, *the result* of our court's affirmed decision *in Gwaltney is based upon the court's equitable abatement of the proceedings.* [18] Therefore, regardless of the validity of the logic supporting this result, no new rule of law was established which would bind this court under the doctrine of *stare decisis.*

### G. Post-*Gwaltney* Cases

In *United States v. Cunnally*, 50 C.M.R. 343 (A.C.M.R.1975), our court declined to follow the *Gwaltney* rationale and abate a case when the accused, an enlisted soldier, was administratively discharged pursuant to Army Regulation 635–200, Personnel Separations: Enlisted Personnel, Chap. 10 (C42, 14 Dec. 1973), after trial and before the convening authority's action. Our court, without commenting on the validity of the *Gwaltney* decision, distinguished

---

**17.** Since the *Gwaltney* decision, Congress has enacted the Military Justice Act of 1983 which contains a statutory definition of the term, "Record". Article 1 (14), UCMJ, 10 U.S.C. § 801 (14) (Supp. I 1983). The legislative history of this Act includes the following interpretation of this term: "The 'record' also will include all briefs, motions and other pleadings, exhibits and documents filed in the case." S.Rep. No. 53, 98th Cong., 1st Sess. 26 (1983). We duly *admit* the following appellate exhibits in evidence: Defense Appellate Exhibits A through H,

and Government Appellate Exhibit 1. Thus, the information therein contained is now a part of "the entire record" within the meaning of Article 66(c), UCMJ, 10 U.S.C. § 866(c).

**18.** The majority of our court did *not* hold that the Secretary's action abated the proceedings: *rather, our court abated the proceedings in "the interests of justice." United States v. Gwaltney,* 43 C.M.R. at 538.

that case on several grounds, including the rationale that a Chapter 10 discharge "is for the good of the service and not in lieu of trial by court-martial" and that "unlike *Gwaltney,* there is no evidence of an agreement ... that the discharge would be in lieu of trial or would otherwise abate the proceedings." *United States v. Cunnally,* 50 C.M.R. at 345.

In *United States v. Corcoran,* CM 435724 (ACMR 9 Nov. 1977) (unpub.), this court, without discussing any existing precedent of the Court of Military Appeals, applied the *Gwaltney* decision. Our court, after noting that the controlling regulation, AR 635–120, was identical in both cases and that the sequence of factual events were substantially the same, stated "we can find no logical reason the decision in the *Gwaltney* case should not be applied in the instant case." *United States v. Corcoran,* CM 435724, slip op. at 3. We do not believe that this unpublished case is of any value as precedent.

In *United States v. Burris,* 21 M.J. 140 (C.M.A.1985), the Court of Military Appeals assumed appellate jurisdiction, reversed our court's holding on the merits, and reinstated the decision of the military judge which granted the accused's motion to dismiss for lack of speedy trial under RCM 707. It did this notwithstanding the fact that the accused's Chapter 10 discharge request pursuant to AR 635–200 had been approved before completion of appellate review. The court apparently believed that no impediment existed to its exercise of power as an Article I [19] appellate court. *See generally United States v. Burris,* 21 M.J. at 141, n. 2.

H. Military Justice Authority of the Secretary of the Army

1. The Exercise of Presidential Power.

Although the President of the United States has certain implied powers flowing from his constitutional position as Commander in Chief, Constitution of the United States [hereinafter U.S. Const. or Constitution], art. II, § 2, cl. 1, this authority has been exercised with great restraint.[20] In regard to military justice, Congress has exercised its broad rule-making power under the U.S. Const. art. I, § 8, to establish a system uniform to all the services. *See generally* 10 U.S.C. Chap. 47. When the President does promulgate executive orders pertaining to the military justice system, the authority primarily relied upon is the rule-making authority expressly delegated to the President by Congress under Article 36, UCMJ,[21] 10 U.S.C. § 836. Thus, it has been the legislative branch rather than the executive branch of our government which, historically, has taken the lead in the establishment of an effective and fair system of military justice for our armed forces. The predominant role which Congress has assumed in this area has been recognized by the United States Supreme Court. *Chappell v. Wallace,* 462 U.S. 296, 301, 304, 103 S.Ct. 2362, 2366, 2367, 76 L.Ed.2d 586 (1983) (referring to Congress as "the constitutionally authorized source of authority over the military system of justice").

While the President allegedly is authorized to delegate and provide for the subdelegation of "any" of the authority vested in him by Article 140, UCMJ, 10 U.S.C. § 940, any such delegations to the service Secretaries currently are to be found within the MCM. The President has not attempted either in the MCM, or elsewhere, to delegate in writing the power to abate a court-martial.

■ The President has both constitutional and statutory authority to promulgate

---

19. U.S. Const. art. I, § 8, cl. 14.

20. The President also has the authority under the U.S. Const. art. II, § 2, cl. 1, to grant pardons. He has not delegated this authority. *See generally* 28 C.F.R. Chap. 1 (1985).

21. A noted exception is found in RCM 1004 in which the President relied on the authority granted him by Articles 18, 36, and 56, UCMJ, 10 U.S.C. §§ 818, 836, 856, *and* by U.S. Const. art. II, § 2, cl. 1, in promulgating the new death penalty procedures contained in the MCM. *See* MCM, App. 21, part II, RCM 1004.

rules and regulations for the government of the Army, *United States v. Eliason*, 41 U.S. at 301; *Ringgold v. United States*, 420 F.Supp. 698, 702 (S.D.N.Y.1976), *app. dismissed*, 553 F.2d 309 (2d Cir.1977), and, so long as the military rules prescribed by the President are not inconsistent with Congressional statutes, they are within the scope of his authority as Commander in Chief. *United States v. Symonds*, 120 U.S. 46, 49, 7 S.Ct. 411, 412, 30 L.Ed. 557 (1887). Thus, the President's implied rule-making authority, as Commander in Chief, U.S. Const. art. II, § 2, cl. 1, appears circumscribed by the express constitutional authority of Congress to "make Rules for the Government and Regulation of the land and naval Forces", U.S. Const. art. I, § 8, cl. 14. Accordingly, any such delegation of authority to, or the exercise of such power as alter ego of the President by, the Secretary of the Army would have to be consistent with Congressional statutes. We believe, for reasons hereinafter discussed, that a transfer of Presidential power to the Secretary to abate a court-martial after findings are announced would be inconsistent with the UCMJ.

■ Moreover, courts-martial, although creatures of limited jurisdiction, are courts of law, as are the Court of Military Appeals and the Court of Military Review. *See Schlesinger v. Councilman*, 420 U.S. 738, 758, 95 S.Ct. 1300, 1313, 43 L.Ed.2d 591 (1975) ("Congress created an integrated system of military courts and review procedures, a critical element of which is the Court of Military Appeals consisting of civilian judges 'completely removed from all military influence or persuasion'"); *Font v. Seaman*, 43 C.M.R. 227, 230 (C.M.A. 1971) (The Court of Military Appeals is a court established by Act of Congress); *United States v. Draughon*, 42 C.M.R. 447, 452 (A.C.M.R.1970) ("[T]he Court of Military Review is a court established by Act of Congress...").

■ *Because courts-martial are courts of law and not mere administrative boards, it requires an act of judicial character to convene them, or to affirm or disaffirm their findings or sentence on appellate review, or to otherwise abate them after jurisdiction has attached.* Cf. *Runkle v. United States*, 122 U.S. 543, 555, 557, 7 S.Ct. 1141, 1146, 30 L.Ed. 1167 (1887). In *Runkle*, the Court said:

> A court-martial ... is a court of special and limited jurisdiction....

> \* \* \* \* \* \*

> There can be no doubt that the President, in the exercise of his executive power under the Constitution, may act through the head of the appropriate executive department.... Here, however, the action required of the President is judicial in its character, not administrative.

*See also United States v. Ellsey*, 37 C.M.R. 75, 77 (C.M.A.1966) ("The convening authority's function in military justice is judicial in nature. His actions are magisterial...."). Also, in *United States v. Nix*, 36 C.M.R. 76, 78–79 (C.M.A.1965), the court said:

> [T]he convening authority performs a number of judicial functions.... The power of courts-martial to try criminal cases and impose punishments ... is ... an exercise of the sovereign judicial power of the United States.... To the extent that he may disapprove entirely the action of the court-martial, the convening authority possesses a judicial power far in excess of that which resides in any other single judicial office.... These examples are by no means all of the judicial functions by which the convening authority is empowered to act....

Judicial powers must be performed personally by those in whom such powers are vested by law; and, accordingly, judicial powers cannot be delegated to or assumed by a subordinate of the power-holder. In *Runkle v. United States*, 122 U.S. 543, 7 S.Ct. 1141, the United States Supreme Court reviewed Article 65 of the Articles of War of 1806, which required a sentence of dismissal of a commissioned officer by a general court-martial to be transmitted to the President for his confirmation or approval. After concluding that the Presi-

dent's action was "judicial in its character, not administrative," the court opined:

> As Commander-in-Chief of the Army he has been made by law the person whose duty it is to review the proceedings of courts-martial in cases of this kind. This implies that he is himself to consider the proceedings ... and decide personally whether they ought to be carried into effect. Such a power he cannot delegate.[22]

*Runkle v. United States,* 122 U.S. at 557, 7 S.Ct. at 1146. *See Weeks v. United States,* 277 Fed. 594, 597 (D.C.Cir.) ("It is well settled that, where the duty imposed upon the President is judicial in character, it may not be delegated away."); *aff'd sub nom. Creary v. Weeks,* 259 U.S. 336, 42 S.Ct. 509, 66 L.Ed. 973 (1922).

■ Thus, assuming but not finding, that the President is vested with inherent judicial authority to abate a court-martial after findings have been announced, and assuming with reservation that the exercise of such authority would not be "inconsistent" with any provision of the UCMJ,[23] we conclude that this judicial power could neither be expressly delegated to or assumed by the Secretary of the Army.

**2. Statutory Power of the Secretary.**

Because the authority to abate a court-martial cannot be derived from a delegation or assumption of Presidential power, the existence of such a Secretarial power must now depend upon a grant of statutory authority.

Although Congress has given the Secretary a broad statutory grant of authority to conduct "all affairs" of the Army, 10 U.S.C. § 3012, it has carefully prescribed by statute the scope of the Secretary's powers under the UCMJ. *See, e.g.,* Articles 4, 14, 15, 22–28, 38, 39, 42, 58a, 60, 64, 65, 68, 71, 72, 74, 76 and 139, UCMJ, 10 U.S.C. Chap. 47 *passim.*

Review of the articles of the UCMJ reveals that the Secretary was given no express statutory authority to abate a court-martial after findings have been announced. In view of the precision with which Congress delineated the various levels and types of authority operating within the military justice system, we believe that a legitimate inference can be drawn that if Congress wished to vest the Secretary with abatement power it would have expressly done so by statute. *Cf. United States v. Simmons,* 6 C.M.R. 105, 108 (C.M.A.1952) ("[F]ailure to confer the power expressly appears ... even more persuasive that Congress did not intend to grant it...."); S.Rep. No. 53, *supra* n. 23. Nevertheless, we will examine certain Articles of the UCMJ to ascertain the nature of the Secretary's judicial powers under the UCMJ.

**(a) The Secretary as a Convening Authority.**

The Secretary is expressly empowered to convene courts-martial by Articles 22–24, UCMJ. Thus, he is vested substantially with all the powers granted to a convening authority under the UCMJ and the MCM. Included within this authority is the judicial power to convene courts-martial, to detail court-martial members and to take action on findings of guilty and the sentence. Articles 22–25, 60, UCMJ, 10 U.S.C. §§ 822–825, 860. A convening authority's powers include the power to set aside the findings of guilty or the sentence of those courts-martial which he is authorized by law to act upon under Article 60, UCMJ. *See, e.g.,* RCM 1107(b). We find that no implied or inherent power of *abatement* can be derived from Article 60, UCMJ. This power is restricted in its application, even though it is discretionary and of a clemency nature. For example, only the individual designated to act as the convening authority in

---

**22.** When we compare Article of War 65 with the current provisions of Article 71(b), UCMJ, we find that the latter also requires the Secretary, Under Secretary or designated Assistant Secretary of the Army to take an action thereunder that is judicial in character.

**23.** *E.g.,* S.Rep. No. 53, 98th Cong., 1st Sess. 25 (1983) (When Congress recently amended Article 71, UCMJ, it was expressly noted that the legislation "will also insure that the government does not terminate military jurisdiction until a legal review of the case is completed.").

the case can exercise the power. And, the power must be exercised at the proper time.[24,25] *Cf.* RCM 1107(b), (c), (d) and (f); *United States v. Shulthise*, 33 C.M.R. 243 (C.M.A.1963) (convening authority could not reconsider his action after forwarding the record for appellate review).

(b) Secretarial Authority to Approve or Disapprove Dismissals.

Article 71(b), UCMJ, pertinently provides that the part of a court-martial sentence providing for dismissal may not be executed until approved by the Secretary concerned or such Under Secretary or Assistant Secretary as may be designated by the Secretary concerned. In such a case, the Secretary, Under Secretary or Assistant Secretary, as the case may be, "may commute, remit, or suspend the sentence, or any part of the sentence, as he sees fit...." Article 71(b), UCMJ, 10 U.S.C. § 871(b). This *review authority* clearly appears to be judicial in character even though its effect is that of clemency. The judicial rather than administrative character of this action is highlighted by the fact

that the action contemplated can even affect the affirmed dismissal *before* it becomes executed. Power that is judicial in character cannot be further subdelegated.[26] *Runkle v. United States*, 122 U.S. 543, 7 S.Ct. 1141; *United States v. Page*, 137 U.S. 673, 680, 11 S.Ct. 219, 221, 34 L.Ed. 828 (1891) (questioning *Runkle* on other grounds); *United States v. Fletcher*, 148 U.S. 84 at 90, 13 S.Ct. 552 at 554, 37 L.Ed. 378 (questioning *Runkle* on other grounds); *see Weeks v. United States*, 277 F. at 597; *compare United States v. Nix*, 36 C.M.R. at 78-79 (containing a discussion of the judicial functions of a convening authority) *and United States v. Ellsey*, 37 C.M.R. at 77 (convening authority's functions in military justice are judicial in nature).[27]

Article 71(b), UCMJ, on its face limits the Secretarial review power granted therein to clemency-type actions regarding a sentence duly affirmed during the appellate review process. It does not grant authority to the Secretary or his designated principal officers to abate the findings of a court-martial, either before or after appellate review.

24. We need not determine whether the Secretary could promulgate regulations reserving to himself *personally* the power to take convening authority action in the cases of officers who have submitted resignations, because he has not attempted to do so in this case. *See* Article 60(c)(1), UCMJ. If the Secretary lawfully assumed the role of convening authority in such cases, he could, of course, fully exercise his discretion in determining whether to approve or disapprove the findings and sentence of a case. However, such a practice would then elevate this function to the highest level of Army authority with all the ramifications, both legal and political, apparent therefrom.

25. In addition to being a convening authority, the Secretary is the "head of the Department of the Army", 10 U.S.C. § 3012(a). Thus, *the Secretary* unquestionably is a "superior competent authority" who *can order charges withdrawn in a court-martial before findings are announced.* RCM 604(a) (emphasis added). The Secretary did not so act in this case. Moreover, if the President revised RCM 306(a) to substitute a "superior competent authority" for a "superior commander", the Secretary could then withhold the authority of any subordinate commander to dispose of the offenses in individual cases, types of cases, or generally. This power would, however, be substantially different from that of case

abatement and could not be used for such a purpose. The Secretary currently has not attempted to withhold general court-martial jurisdiction in the case of officers who have submitted resignations for the good of the service under AR 635-120, Chap. 5. *See* AR 635-120, para. 5-1b. Such a policy could result in speedy trial problems in some cases.

26. However, judicial actions *personally* consummated by those cloaked with the authority of law can be *announced* by lesser officials and regularity will be presumed. *Compare United States v. Fletcher*, 148 U.S. at 84, 89-91, 13 S.Ct. at 554, 37 L.Ed. 378 (1893), *and United States v. Page*, 137 U.S. at 680-682, 11 S.Ct. at 221-222, 34 L.Ed. 828 (1891), *with Runkle v. United States*, 122 U.S. at 558-561, 7 S.Ct. at 1147-1149.

27. Historically, judicial powers have been vested in convening authorities and military commanders as an attribute of command. These powers were not subject to further delegation. *See generally United States v. Caputo*, 18 M.J. 259, 260 n. 1 (C.M.A. 1984); *United States v. Kalscheuer*, 11 M.J. 373 (C.M.A. 1981) (search authorization delegation); *United States v. Newcomb*, 5 M.J. 4 (C.M.A. 1978), and authority therein cited (the results of this case have been partially modified by the Military Justice Act of 1983).

The power to act upon the court's sentence is limited under this statute, until after appellate review is completed. As the Senate Armed Service Committee recently observed:

> This legislation [Article 71] continues the present requirement that death sentences receive Presidential approval and that dismissal of an officer be approved by the Secretary of the Military Department concerned before such sentences are executed under Article 71. *Such reviews are conducted after all legal reviews are completed,* and do not involve a review of the legality of the proceedings; rather, they are conducted as a matter of clemency. In such cases, the remaining portion of the sentence may be executed when approved by the convening authority, but the President (in death cases) and the Secretary (in dismissal cases), as a matter of clemency, may remit any previously executed portion of the sentence.
>
> *The legislation also continues current law requiring completion of the legal review of the case prior to execution of a punitive discharge. This not only will protect the accused, it will also ensure that the government does not terminate military jurisdiction until a legal review of the case is completed.*

S.Rep. No. 53, 98th Cong., 1st Sess. 24–25 (1983) (Military Justice Act of 1983) (emphasis added).

### (c) Secretarial Review Authority Under Article 74, UCMJ.

The legislative purpose of Article 74, UCMJ, was to vest the Secretary of a military department with authority to "review the sentence of any court martial [sic], which will give him clemency and parole powers as well as ultimate control of sentence uniformity." S.Rep. No. 486, 81st Cong., 1st Sess. 31 (1949).

The powers granted under Article 74, UCMJ, are carefully defined in the statute.[28] Neither Article 74(a) or 74(b) grant the authority to abate a court-martial; power to substitute an administrative discharge for a discharge or dismissal is limited to instances in which the discharge or dismissal has been "executed".

As the Deputy Assistant Secretary has not attempted to base his authority to discharge appellant on Article 74(b), we need not determine, at this time, whether such *review* powers are judicial or quasi-judicial in scope, and whether such powers are subject to further delegation.

### (d) Abatement Power.

■ We conclude that the Secretary has been granted neither express nor implied statutory power to abate a court-martial. As stated by the Attorney General of the United States:

> It is quite evident that, as an essential part of these powers [U.S. Const. art. I, § 8, cl. 14], it belongs exclusively to Congress to ordain or provide for courts martial [sic]; to define their jurisdiction, to make their sentences final and conclusive, or subject to some revisory power; to designate by whom they should be convened, and by whom their sentences should be revised or confirmed, and generally to make such provision concerning them as they deemed proper.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> It follows from the exclusive power of Congress over the subject, that no one can have any authority either to convene a court martial, or to affirm or disaffirm its decision, unless it can be shown that such authority has been delegated by Congress.

5 Op. Att'y. Gen. 509 (1852). Such a delegation has not occurred.

### 3. Conclusion.

The Secretary of the Army has neither assumed nor been delegated Presidential powers to abate a court-martial.

---

**28.** The Secretary also is granted statutory parole authority in 10 U.S.C. Chap. 48; however, this authority does not include the authority to abate a court-martial. *See, e.g.,* 10 U.S.C. §§ 952–954.

Moreover, Congress has not vested the power to abate a court-martial after findings in the Office of the Secretary.[29]

In fact, Congress recently has enacted legislation withdrawing any authority allegedly residing in either the Army Board for Correction of Military Records (ABCMR), under 10 U.S.C. § 1552 (1982 and Supp. I 1983), or the Army Discharge Review Board (ADRB), 10 U.S.C. § 1553 (1982 and Supp. I 1983), to alter a court-martial finding, or to modify a court-martial sentence other than "for purposes of clemency." These Boards were the primary administrative entities employed by the service Secretaries to correct military records and to upgrade discharges. Accordingly, by limiting their authority, Congress further demonstrated its intent to protect the military's Article I court system from unwarranted administrative interference.[30]

### I. The Applicable Rule

We believe that the broad precedent established by *Sippel, Speller, Robertson,* and *Entner* remains valid.

 We conclude that once court-martial jurisdiction attaches,[31] it continues until the appellate processes are completed, despite the intervening administrative separa-

tion of appellant and the termination of his status as a commissioned officer. Because jurisdiction had duly attached in this case, a subsequent administrative separation of appellant, even if personally directed by the Secretary, would neither abate these proceedings nor compel this court to do so.

Moreover, we believe it is immaterial whether an appellant's administrative separation is under honorable or other than honorable conditions. We firmly reject any so-called theory of constructive or implied remission of court-martial proceedings or sentence. "[T]he administrative separation of an individual convicted by court-martial has no effect on the course of his case through judicial channels." *United States v. Entner,* 36 C.M.R. at 63.

We further conclude that this court did not establish either a new or a modified rule of law in *Gwaltney,* and that we are not bound by the questionable findings of fact in that case. To the extent that any rule of law contrary to *Sippel, Speller, Robertson,* and *Entner* may have been generated by *our* decision in *Gwaltney,* we decline to follow it.

### J. Controverted Facts and Regulatory Interpretations

Normally our inquiry into this allegation would be completed; however, in view of

---

**29.** But compare the discussion at Section H.2.(a), *supra* n. 25, concerning the Secretary's *judicial* powers, as convening authority, to withdraw charges and to take action on certain courts-martial cases. This authority was not invoked by the Secretary in this case.

**30.** In its report on the Military Justice Act of 1983, the Senate Armed Services Committee stated:

When Congress established the UCMJ in 1950, it provided a comprehensive system for judicial review of court-martial proceedings.

\* \* \* \* \* \*

The BCMRs and DRBs were established at the close of World War II, prior to enactment of the UCMJ, to relieve Congress of the burden of correcting military records through the passage of private bills. According to testimony from the Department of Defense, the members of these boards generally are laymen who have no judicial training. The primary work of the boards involves review of administrative records.... Because the UCMJ provides a comprehensive system for appellate

review and post-conviction relief, these boards need not be involved in the issues of law concerning the court-martial process.

The proposed legislation would make it clear that ... the BCMRs and DRBs have no authority to modify, as a matter of law, findings or sentences of courts-martial. *This will have the effect of channelling all appellate proceedings and claims for post-conviction relief into the judicial forums established for such actions by Congress in the UCMJ.*

S.Rep. No. 53, 98th Cong., 1st Sess. 36 (1983) (emphasis added).

**31.** We need not determine when jurisdiction attaches for purposes of this rule. Such a determination obviously will be based on the *totality of the circumstances.* Suffice it to say, if jurisdiction exists, it certainly will have attached before findings are announced. In this case, the appellant retained his military status until after both his trial and the convening authority's action had been completed; thus, jurisdiction had attached before his separation was accomplished.

the evolution of this area of the law, we are constrained to make certain additional findings of fact and observations.

First, we find that the provisions of AR 635–120 applicable in appellant's case are substantially the same as those contained in the version of AR 635–120 considered by this court in *Gwaltney*.

1. The Effect of AR 635–120.

Next, we find that appellant's administrative separation from the service was based on the approval of appellant's tendered resignation. This resignation was a "Resignation For The Good Of The Service". *See generally* the chapter title of AR 635–120, Chap. 5, and para. 5–1a. See Appendix A to this opinion. (Defense Appellate Exhibit H—Affidavit of John M. Matthews, Deputy Assistant Secretary).

We note that in AR 635–120 the words "Resignation in lieu of trial" appear only once, and then only as the title of paragraph 5–2 thereof; and, that the regulation contains no express provision attempting to vest in a resigning officer either the right to have a tendered resignation accepted or the right to have a court-martial abated if the resignation ultimately is accepted. To the contrary, the regulation provides that "[t]he tender of resignation for the good of the service does not preclude or suspend disciplinary proceedings in a case." AR 635–120, para. 5–1b. The regulation also admonishes that "[t]he legal counsel [of the resigning officer] should fully advise the officer of the implications of his voluntary action." AR 635–120, para. 5–5.

Appellant urges this court that AR 635–120 should be interpreted, in light of the erroneous titling of paragraph 5–2 thereof, as tacitly promulgating a right to court-martial abatement upon the acceptance of his tendered resignation. We decline to so interpret AR 635–120. Such a regulatory provision would constitute a material and primary consideration for the submission of such a resignation. Yet, neither the provisions of the regulation nor its rigidly prescribed resignation format includes such a condition. We believe that if the Secretary had intended for such an important provi-sion to be applicable, he would have expressed such conditions either in the body of the regulation or in the format prescribed for the submission of such resignations. Finally, we note that the Secretary has retained authority to make exceptions, in certain individual cases, to the provision of AR 635–120. AR 635–120, para. 1–3f; *see also* commentary, *supra* n. 5.

■ We, therefore, conclude that the erroneous heading of paragraph 5–2, AR 635–120, is of no legal significance; and, that AR 635–120 neither expressly nor by implication provides for the right of court-martial abatement following acceptance of an administrative discharge.

2. The Intent of Appellant.

■ Although the intent of the parties concerning court-martial abatement is not relevant to the disposition of this case, we conclude appellant could not reasonably have harbored a belief that acceptance of his resignation would abate his court-martial. In support of this finding of fact, we point to the lack of an abatement provision in either the regulation or its prescribed format. We also find most significant and compelling the fact that the detailed resignation actually tendered by appellant made no reference to or expressed a reliance upon such a condition.

Incidentally, appellant was aware of the Secretary's retention of the power to make exceptions to his own regulation in certain individual cases. In fact, an exception appears to have been made in order for appellant's resignation to be accepted by the Deputy Assistant Secretary. Specifically, AR 635–120, para. 5–2b, provides:

A resignation submitted under this paragraph *ordinarily will not be accepted* ... if the offense, or offenses, with which the officer is charged would warrant imposition by general court-martial of punishment more severe than dismissal from the service.

(Emphasis added.) Appellant had been sentenced to confinement in addition to dismissal. While the Deputy Assistant Secretary

acted to appellant's benefit by accepting his resignation, an exception could just as easily have been made to decline to abate appellant's court-martial (assuming that the regulation had provided such a right), for example, on the grounds that it was in both the Army's and appellant's best interest for appellant to undergo meaningful penal rehabilitation.

Thus, we find appellant's assertion of reliance on an alleged Secretarial abatement promise to be without merit. Such a promise did not exist and such a promise could not reasonably be perceived to have existed by appellant.

3. The Deputy Assistant Secretary.

Broad authority to take action regarding military justice matters, military manpower and personnel policies, and Department of the Army Military Review Board agencies has been delegated by the Secretary of the Army to the Assistant Secretary of the Army (Manpower and Reserve Affairs). General Orders No. 15, Assignment of Duties and Responsibilities Within the Office, Secretary of the Army, paras. 8e, 8x and 8z (12 June 1985).

We presume, although we currently are unaware of any written sub-delegation of authority, that the Deputy Assistant Secretary has been duly delegated authority to accept officer resignations and to direct the administrative discharge of these officers. Reviewing the evidence of record in this case, we find as fact that the Secretary of the Army did not personally act to administratively discharge appellant. Appellant's resignation was accepted, and his discharge directed, by the Deputy Assistant Secretary. *See* Appendices A and B to this opinion (Defense Appellate Exhibit H—Affidavit of Deputy Assistant Secretary and Defense Appellate Exhibit E—Order of Deputy Assistant Secretary, respectively).

■■■ The Deputy Assistant Secretary cannot be delegated any of the judicial power vested by law in the Secretary, his Under Secretary or a designated Assistant Secretary.[32] Thus, although we believe that the Deputy Assistant Secretary did intend that all court-martial proceedings against appellant would be abated, he lacked the authority to direct or cause such an abatement. His exercise of Secretarial authority to administratively discharge appellant cannot divest this court of its statutory jurisdiction under Article 66, UCMJ.

Appellant's assignment of error on this issue is without merit.

## II. MULTIPLICITY

■■■ Appellant asserts that the military judge erred by failing to dismiss Charge I and its Specification (drunk driving) as being multiplicious for findings with Charge II and its Specification (involuntary manslaughter). In this case, we note that the identical conduct of appellant was alleged as the basis for the drunk and reckless driving averment in Charge I and its Specification and as the basis for the culpable negligence averment in Charge II and its Specification. Review of the providence inquiry, in accordance with the procedure of *United States v. Bullington,* 18 M.J. 164 (C.M.A.1984), confirms this fact. Accordingly, we find these two offenses multiplicious for findings. *United States v. Mallery,* 14 M.J. 212 (C.M.A.1982) (summary disposition); *see United States v. McMaster,* 15 M.J. 525 (ACMR), *pet. denied,* 16 M.J. 125 (C.M.A.1983); *see also United States v. Holt,* 16 M.J. 393, 394 (C.M.A.1983); *cf. United States v. Glover,* 16 M.J. 397 (C.M.A.1983) (multiplicity existed when the force used to commit the assault constituted the force used to commit the sexual offenses). Accordingly, we will conditionally dismiss Charge I and its Specification. Because the military judge failed to treat the two offenses as multiplicious for sentencing purposes we will reassess the sentence.[33]

---

**32.** We have already determined that none of these officials have been vested by law with the authority to *abate* a court-martial.

**33.** In future cases of a similar nature, it might be appropriate for the military judge, after completing the providence inquiry and duly entering findings of guilty to both offenses, to *condi-*

## III. DETAIL OF THE MILITARY JUDGE

Appellant asserts that the court lacked jurisdiction to try him because there was no indication that the military judge was properly detailed. This contention is without merit.

After reviewing this entire record, including the evidence contained in Government Appellate Exhibit 1, an affidavit from the military judge, we find as a fact that Lieutenant Colonel Craig C. Jacobsen had been separately detailed to serve as military judge in the case at bar by both himself and by the Chief Trial Judge, 5th Judicial Circuit, before the trial commenced. *See generally* RCM 503(b)(1) and Army Regulation 27-10, Legal Services: Military Justice, para. 8-6 (1 July 1984). We also find that the record of trial currently contains information adequately reflecting the detailing of the military judge.[34]

However, in technical compliance with RCM 503(b)(2), action will be taken in accordance with the subsequent order of this court to reduce the above described oral orders to writing and to include them in the record of trial.

## IV. SENTENCE APPROPRIATENESS

In the course of reassessing the sentence, we have duly considered all of the relevant evidence of record, including that information contained in Defense Appellate Exhibits E and H.

We are aware that the Secretary of the Army, through his delegate, has separated appellant from active duty as a commissioned officer and has duly characterized his service as being under other than honorable conditions. In assessing the appropriateness of a sentence which includes dismissal, we give great deference to the administrative characterization of appellant's military service by the Secretariat. We believe this to be appropriate as Congress has vested the Secretary with broad statutory powers both to separate administratively and to characterize the service of officers in appellant's circumstance. Although we are appellate judges, we are not and need not be oblivious to what actually happened to appellant's resignation request. To do so would be an absurdity and, as we have stated before, *lex non patitur absurdum.*[35]

We are aware that, even if we affirm the dismissal in this case, the Secretary still retains the statutory authority to disapprove it or to substitute an administrative discharge in its stead. *See generally* Articles 71 and 74, UCMJ, 10 U.S.C. §§ 871 and 874 (1982); *see also* 10 U.S.C. § 1552 (1982). We see no valid reason to prolong appellant's concern by refusing to accept the inevitable—such persistence would merely serve to exacerbate the situation.

---

*tionally* dismiss the less serious offense or the offense which least adequately describes appellant's criminal conduct. Dismissal can be accomplished either alone or in conjunction with specification consolidation. We believe an appellant inherently waives all standing to complain about specification consolidation whenever he seeks specification dismissal on the grounds of multiplicity for findings purposes. An example of one form of conditional dismissal is as follows:

> The _____ (identify the specification/charge) is conditionally dismissed on the grounds of multiplicity for findings purposes. However, as (identify accused) has been found guilty of (identify the dismissed specification/charge), (these) (this) specification(s) (and Charge ___) can be revived in the discretion of higher appellate authority in accordance with the conditions set out in *United*

States v. Williamson, 19 M.J. 617 (ACMR 1984), *pet. denied,* 21 M.J. 24 (CMA 1985).

34. We note that the official "Request For Trial Before Military Judge" form, contained in the trial record states:

> I have been informed that LTC Craig C. Jacobsen is the military Judge detailed to the court-martial ... pending against me....

This form was signed on the day of trial by appellant, his civilian attorney, trial counsel, and the military judge.

Additionally, trial counsel announced on the record that:

> [T]he following persons detailed to this court-martial are present:
> Lieutenant Colonel Craig C. Jacobsen, JAGC Corps, Military Judge.

35. The law does not suffer an absurdity.

Further, as appellant already has been separated from the service, it is apparent that the dismissal could not be meaningfully enforced. The only way it could ever be enforced is if appellant's administrative separation were to be subsequently declared null and void. We will not speculate as to this remote possibility. The Secretariat was aware of the possible ramifications of their action when they directed appellant's separation, and we need not now concern ourselves with an assortment of government asserted "what if's". This court remains convinced that *sententia non debet esse illusorium suum effectum habere debet.*[36]

Accordingly, we will not affirm the adjudged dismissal.

The findings of guilty of Charge I and its Specification are set aside and that Charge and its Specification are dismissed.[37] The remaining findings of guilty are affirmed.

Reassessing the sentence on the basis of the error noted and the entire record, the court affirms only so much of the sentence as provides for confinement for a period of five months.[38]

Judge CARMICHAEL and Judge ROBBLEE concur.

### APPENDIX A

### AFFIDAVIT

I, John W. Matthews, want to make the following statement under oath. When I approved the Resignation for the Good of the Service tendered by Captain Robert L. Woods, 002–44–3418, it was my understanding and intention that all court-martial proceedings against him would be abated.

/s/ John W. Matthews

JOHN W. MATTHEWS

Deputy Assistant Secretary

(DA Review Boards, Personnel Security and Equal Employment Opportunity Compliance and Complaints Review)

Subscribed and sworn to before me this 9th day of January, 1986.

### APPENDIX B

### 2 APR 1985

SAMR–RB

MEMORANDUM FOR COMMANDER, US ARMY MILITARY PERSONNEL CENTER

SUBJECT: Resignation for the Good of the Service (CPT Robert L. Woods, AD, 002–44–3418)

The recommendation of the Department of the Army Ad Hoc Review Board that the resignation for the good of the service tendered by CPT Robert L. Woods, AD, 002–44–3418, be accepted with discharge under other than honorable conditions, is approved.

/s/ John W. Matthews

John W. Matthews

Deputy Assistant Secretary

(DA Review Boards, Personnel Security and Equal Employment Opportunity Compliance and Complaints Review)

---

**36.** A sentence ought not to be illusory; it ought to have its proper effect.

**37.** Because we find as fact that appellant is guilty of Charge I and its Specification, this Charge and Specification can be revived in the discretion of higher appellate authority in accordance with the conditions set out in *United*

States v. Williamson, 19 M.J. 617 (ACMR), *pet. denied*, 21 M.J. 24 (CMA 1985).

**38.** A separate order will be issued by this court to cause the oral orders detailing the military judge to this case to be reduced in writing and to be included in the trial record. *See* Sec. III, *supra.*