Edward T. O'BRIEN, Appellee,

v.

CHATEAU GRAND TRAVERS,
LTD., Appellant.

No. G82–361 CA7.

United States District Court,
W.D. Michigan, S.D.

June 27, 1983.

Warner, Norcross & Judd, by Patrick Mears, Grand Rapids, Mich., for appellee.

Landman, Luyendyk, Latimer, Clink & Robb by William H. Heritage, Jr., Grand Rapids, Mich., for appellant.

## OPINION AND ORDER ON BANKRUPTCY APPEAL

MILES, Chief Judge.

This appeal arises out of an adversary proceeding in bankruptcy. The appellee, Edward Timothy O'Brien, doing business as Chateau Imports, filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Western District of Michigan in June 1980. He then filed a complaint in that court against the appellant, Chateau Grand Travers, Ltd., for claims arising out of the appellant's alleged sale of a wine wholesalership to the appellee.

The appellant is a wholly-owned subsidiary of O'Keefe Centre, Ltd., a Michigan corporation. Edward O'Keefe owns all of the stock of O'Keefe Centre, Ltd. and also is the president of appellant Chateau Grand

Travers, Ltd. In 1977 the appellant owned a vineyard and winery in Grand Traverse County, Michigan, and held a wholesale liquor license for that location. The appellant also had another wholesale liquor license for an operation in Southfield, Michigan, which specialized in the marketing and sale of imported wines.

In 1978, the appellant expressed a willingness to sell its Southfield business to the appellee who had been a salesman and vice president with the appellant company. By December the parties entered into a letter agreement. Appellee O'Brien paid a $60,000 downpayment, plus approximately $5,000 in other final payments, for a total of $65,000. In exchange, the appellant Chateau Grand Travers agreed to sell the equipment and inventory under specified terms and to use its "best efforts" to transfer the liquor license to the appellee. No further written agreement was entered into by the parties.

During the next year and a half, the appellee undertook various obligations on behalf of his new business, Chateau Imports, in anticipation of obtaining the liquor license. These obligations included receiving no salary and incurring expenses for inventory totalling over $200,000. Despite assurances to the contrary, the appellant was making no effort to transfer the license to the appellee. It most likely stalled the transfer because such a transfer would trigger an investigation by the Michigan Liquor Control Commission (MLCC). Chateau Grand Travers ultimately was unable to transfer the liquor license because of its misconduct, including over 40 violations, for which the MLCC revoked the license.

Because the appellant was having trouble transferring its liquor license at the Southfield operation to the appellee, the parties entered into a series of transactions to make it appear as though the appellee was continuing as an employee of the appellant. This method enabled the appellee's business, Chateau Imports, to continue in operation even though it did not have a liquor license in its own name. In particular, the appellant issued various promissory notes, at different times, to appellee O'Brien that allegedly reflected the amounts the appellee had invested in the business.

In the spring of 1980 one of the appellee's creditors sued to enjoin the sale of Chateau Imports' wines. The Grand Traverse County Circuit Court entered the injunction which precipitated further financial troubles for the appellee causing him to file his Chapter 11 petition. By suing the appellant Chateau Grand Travers in an adversary proceeding, appellee O'Brien sought the return of his investment in his business because he never received the liquor license for which he had bargained. As a basis for his claim of damages, the appellee used the notes executed by the appellant, the $65,000 downpayment, and other miscellaneous expenses.

After a six-day trial, the Bankruptcy Court, Judge David E. Nims, Jr., presiding, found that appellant Chateau Grand Travers, Ltd. breached its agreement to use its best efforts to furnish O'Brien with a liquor license. The court specifically found that a sale was never completed and that the appellee was simply operating the Southfield business as an employee on behalf of the appellant. In arriving at its judgment for the appellee, the court computed the amount as follows:

| | | |
|---|---|---|
| $ | 31,632.78 | (downpayment adjusted for appellee's depletion of inventory) |
| + | 217,000.00 | (amount of five promissory notes) |
| + | 2,262.02 | (appellee's miscellaneous expenses) |
| $ | 250,894.80 | (Subtotal) |
| − | 85,858.00 | (adjustment for inventory improperly accounted for by appellee) |
| $ | 165,036.80 | (Subtotal) |
| + | 35,485.28 | (interest at 12% from July 1, 1980) |
| $ | 200,522.08 | TOTAL JUDGMENT |

This appeal involves three primary issues: (1) whether the Bankruptcy Court's findings of fact with respect to the parties' purported accountings and settlements are clearly erroneous, (2) whether the Bank-

ruptcy Court had jurisdiction to enter an order in light of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and (3) whether the court below properly awarded 12% interest from July 1, 1980.

In reviewing the findings of the Bankruptcy Court, district courts ordinarily must not set them aside unless they are clearly erroneous. Bankr.R. 810; *In re Eufaula Enterprises, Inc.*, 565 F.2d 1157, 1160 (10th Cir.1977). Because of the *Northern Pipeline* case, however, some courts have concluded that this standard of review unconstitutionally vests non-Article III courts with too much power. *See, e.g., 1616 Reminc Limited Partnership v. Atchison & Keller Co.*, 704 F.2d 1313, 1318 (4th Cir.1983). Whether the appropriate standard of review is to be *de novo* or limited to reversing only when findings are clearly erroneous, it is of no consequence to the instant appeal. After a careful review of the entire record, this court concludes that Judge Nims' decision passes scrutiny under either standard. In particular, there is substantial support in the record for the Bankruptcy Court's critical conclusion that Mr. O'Keefe lacked credibility.

Appellee O'Brien maintains that between January 1979 and July 1980, there were five accountings which the parties conducted to determine the amount of the appellee's investment in the Southfield operation. The first one in January 1979 was when the parties agreed that the appellee was to make final payments of approximately $65,000 in exchange for the appellant's transferring the business. The only remaining unfulfilled condition was the appellant's use of its best efforts to transfer the liquor license. Appellee O'Brien contends that the second claimed accounting took place in July 1979 when he met with appellant's representative, Edward O'Keefe. The parties established that O'Brien had invested $80,400 in the import business; therefore, the appellant executed a promissory note in that amount to the appellee. For the third accounting, the parties met in January 1980. They reviewed a wide range of appellee's financial records for Chateau Imports, and the appellant issued another promissory note for $157,000.

At their fourth meeting in April 1980, the appellee and O'Keefe examined the records of Chateau Imports with the appellant's former bookkeeper and secretary, Mary Jo Joslyn. According to Joslyn, this particular accounting was thorough and complete.

The fifth and final alleged accounting took place in July 1980 at appellant's offices. At this time O'Keefe sought the return of the two promissory notes totalling $237,400 in exchange for five separate notes totalling $217,000. Appellee O'Brien agreed to this procedure, and the parties intended that the underlying obligations on the five notes would be discharged once the appellant transferred all of its rights in the Chateau Imports business and appellee received the wholesale liquor license.

■ The record in this case clearly supports the conclusion that the parties entered into a negotiated arms-length transaction to sell a wine wholesalership. Essential to the operation of this business was a liquor license. When it was evident that the very purpose of the parties' agreement was thwarted by the vendor's inability to transfer this license, the parties renegotiated their relationship. They acknowledged that O'Brien was no longer a vendee of the business; he was merely an employee who was investing substantial sums for the benefit of the appellant. Therefore, the appellant issued the promissory notes which accurately reflected the amounts which the appellee had invested in the operation. These amounts were not arbitrary and were determined after lengthy evaluation of the records of Chateau Imports. Judge Nims best described this unusual situation as follows:

> Actually, the court does not feel that there was nearly the fraud perpetrated on the Liquor Control Commission as Mr. O'Keefe and, perhaps, Mr. O'Brien believed there to be. As a matter of fact,

the Court would find that although Mr. O'Brien thought he was operating the business and Mr. O'Keefe thought he was operating the business, the business could not operate under Mr. O'Brien because Mr. O'Brien never had any license. So the business in fact, was operated by Grand Travers which was the only entity involved there that had a license. And the obligations were bona fide obligations, as far as the Court can determine, by Grand Travers to Mr. O'Brien. Record at 165–66. Not only was the judgment in the appellee's favor proper, but the amount of the award is clearly supported by the record. The appellee's $65,000 downpayment was reduced to approximately $31,000 to account for inventory which the appellee depleted to pay another creditor. The bulk of the award, $217,000, was clearly governed by the five promissory notes which the appellant executed. The $2,000 in miscellaneous expenses was well-documented; moreover, in reducing the award by over $85,000 the Bankruptcy Court held the appellee to a strict standard of proof. All credible evidence in the record indicates that the parties accomplished a full reconciliation of their financial affairs in July 1980.

■ The second issue on this appeal involves the Supreme Court's landmark decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Appellant Chateau Grand Travers contends that the Bankruptcy Court lacked jurisdiction to enter an order in the instant adversary proceeding. As *Northern Pipeline* states, its application is prospective only. *Id.* 102 S.Ct. at 2880. In particular, the Sixth Circuit has noted that "[p]rospective application of *Northern* mandates, at a minimum, that all bankruptcy court entries of judgment prior to June 28, 1982, as predicated upon § 1471 jurisdiction, are to be afforded *de facto* validity." *Rhodes v. Stewart*, 705 F.2d 159, 160–61 (6th Cir. 1983). In the case at bar the bankruptcy judgment was entered on April 19, 1982, and the appellant filed its notice of Appeal on April 26. There is no reason to disturb

the judgment of the Bankruptcy Court based on jurisdictional aspects of *Northern Pipeline*. *See In re Montgomery Mall Limited Partnership*, 704 F.2d 1173, 1175 (10th Cir.1983) (*Northern Pipeline* does not affect Bankruptcy Court decisions pending on appeal before June 28, 1982) (citing *Barnes v. Whelan*, 689 F.2d 193, 196 n. 1 (D.C.Cir.1982)).

Finally, the appellant contends that the Bankruptcy Court improperly applied a 12% rate of interest as damages from July 1, 1980 to the filing of the complaint. In particular, it contends that the maximum allowable rate is 5%. The appellant's argument is without merit.

■ Awarding of interest as an element of damages is permitted under the theory of wrongful detention of money due and owing. The two leading Michigan cases on the subject, *Currie v. Fiting*, 375 Mich. 440, 454–55, 134 N.W.2d 611, 616 (1965), and *Vannoy v. City of Warren*, 26 Mich. App. 283, 288–89, 182 N.W.2d 65, 68–89 (1970), *aff'd on other grounds*, 386 Mich. 686, 194 N.W.2d 304 (1972), allow the trier of fact to award interest as damages from the date of injury to the filing of the complaint. As to the period after the complaint is filed, the statutory rate of interest applies until the judgment is paid. Mich. Comp.Laws § 600.6013. The period from injury to the complaint's filing, however, is not governed by any statutory rate, and the case law does not confine an award to any particular rate of interest.

Therefore, this court concludes that the rate is vested in the sound discretion of the trier of fact and finds no basis on which to hold the awarding of 12% to be an abuse of such discretion.

All other issues raised by the appellant have been duly considered, and the court has found them to be without merit.

### ORDER

Based on the above discussion, the judgment of the Bankruptcy Court is hereby AFFIRMED.

IT IS SO ORDERED.