**JOHN HANCOCK FINANCIAL SERVICES, INC. a Delaware corporation, Plaintiff,**

v.

**OLD KENT BANK, a Michigan state chartered bank; Michigan National Bank, a nationally chartered bank, and Patrick W. Sherman, Defendants.**

No. 00–73879.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 30, 2002.

Francis R. Ortiz, Dickinson Wright, Detroit, MI, for John Hancock Financial Services, Inc.

Molly E. McFarlane, Nathaniel R. Wolf, Warner, Norcross, Grand Rapids, MI, for Old Kent Bank Michigan, Inc.

Gary J. Galopin, Nedelman Pawlak, Farmington Hills, MI, for Michigan National Bank and Standard Federal Bank.

Charles E. Chamberlain, Jr., Willey & Chamberlain, Grand Rapids, MI, for Patrick W. Sherman.

**1.** The checks in question were all made out to

## MEMORANDUM AND ORDER

COHN, District Judge.

### I. *Introduction*

This is an action brought by a payee for conversion of personal checks. Plaintiff, John Hancock Financial Services, Inc. (John Hancock), claims that defendant, Old Kent Bank (Old Kent) converted checks on which John Hancock was the designated payee by paying the check proceeds to an unauthorized third party, defendant Patrick Sherman (Sherman). John Hancock's claims are based on common law conversion, conversion under the Uniform Commercial Code (UCC), M.C.L.A. § 440.3420(1) and negligence.

Before the Court is John Hancock's motion for summary judgment on the common law conversion and UCC conversion claims. Also before the Court is Old Kent's motion for partial summary judgment as to the checks paid by Old Kent before June 2, 1997 on the grounds that the statute of limitations has tolled on John Hancock's claims regarding these checks. For the reasons that follow, John Hancock's motion will be granted with respect to the UCC conversion claim; Old Kent's motion will be granted; and John Hancock's claims regarding checks paid by Old Kent prior to June 2, 1997 will be dismissed.

### II. *Facts*

#### A.

#### 1.

Sherman, a marketing representative of John Hancock who sold insurance and investment products, devised a scheme to embezzle from three John Hancock clients. Beginning in November 1993, Sherman instructed Albert and Janice Van Buren (the Van Burens) to write checks to John Hancock[1] but to deliver them to him. Sher-

"John Hancock", "John Hancock Financial

man told the Van Burens that he would then give the checks to John Hancock.[2]

Sherman indorsed the checks with a stamp reading "Sherman and Associates Financial Services." After indorsing the checks, Sherman took them to an Owosso, Michigan branch of Old Kent at which he had established a checking account under the name "Sherman and Associates Financial Services." Old Kent paid on the checks and credited Sherman's account in the amounts stated on the checks.

Between November 1993 and March 2000, when Sherman's scheme was discovered, the amount of each check signed by the Van Burens [3] and made payable to John Hancock was credited to Sherman's account by Old Kent. John Hancock says that Old Kent wrongfully credited $760,044.16 into Sherman's account.

### 2.

In January 1999, Sherman began to embezzle money from another John Hancock client, Dr. David Klein, using the same scheme. Between January 1999 and March 2000, four checks signed by Dr. Klein and made payable to John Hancock were credited to Sherman's account by Old Kent. As a result, Old Kent credited approximately $19,000.00 into Sherman's account.

### 3.

Sherman stated in his deposition that he was never questioned by Old Kent regarding the inconsistency between the indorsement and the name of the payee. He also stated that he never lied about nor gave any explanation for his authority to effectively cash checks made payable to John Hancock and have the amounts credited in his "Sherman and Associates Financial Services" account.

### B.

After the scheme was discovered, John Hancock paid Mrs. Van Buren back the money that she lost due to Sherman's embezzlement and also paid her 7% interest on the amount of each check from the date of issuance through October 16, 2000.[4] John Hancock also paid Dr. Klein back the money he lost due to Sherman's embezzlement.

### C.

Old Kent and John Hancock entered into a tolling agreement in which they agreed to stay the statute of limitations as of June 2, 2000.

### III. *Discussion*

### A. *Summary Judgment Standard*

Summary judgment is appropriate when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

---

Services", "John Hancock Life", or "Signator Investors, Inc." a wholly-owned subsidiary of John Hancock. Collectively, the checks will be referred to as payable to "John Hancock."

**2.** It is undisputed that Sherman was authorized to physically accept checks on behalf of John Hancock in payment of insurance premiums and investment products but that he was not authorized to indorse such checks.

**3.** Of the checks issued by the Van Burens, 33 were drawn on the Van Buren Commercial Building account, 38 were drawn on the Van Buren Construction, Inc. account and one was drawn on the Van Buren's personal account.

**4.** Mr. Van Buren died before the embezzlement was discovered.

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In so doing, the Court "must view the evidence in the light most favorable to the non-moving party." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 101 (6th Cir. 1995).

### B. *Conversion under the UCC*

#### 1. *The Underlying Conversion*

Under § 440.3420 of the UCC, an instrument is "converted if ... a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." An instrument is delivered to the payee when it is delivered to an agent of the payee. *Id.* Comment 1.

John Hancock argues that it has standing to assert a claim for conversion under § 440.3240 because it received delivery of the checks when they were delivered to Sherman, its agent. John Hancock argues that Old Kent converted the checks in violation of § 440.3420 when it made payment on them and credited the amount of the checks into Sherman's account because Sherman was neither a designated payee nor authorized to receive payment under the checks.

■ Old Kent challenges neither the applicability of nor its liability under § 440.3420. Rather, Old Kent argues that John Hancock's claim is precluded, under § 440.3406 of the UCC, to the extent that its negligent supervision of Sherman contributed to Sherman's forged indorsement of the checks. Therefore, Old Kent argues that summary judgment is inappropriate because there are genuine issues of material fact in dispute regarding whether John Hancock was negligent in its supervision of Sherman. John Hancock argues that § 440.3406 is inapplicable to its claim of conversion. John Hancock argues, therefore, that the issue of whether it was negligent in its supervision of Sherman is irrelevant to Old Kent's liability under § 440.3420 and summary judgment is appropriate.

#### 2. *The Preclusion Defense to Conversion under the UCC*

Under § 440.3406 of the UCC, "[a] person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument ...." *Id.* at (1).[5] Further, "if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss." *Id.* at (2).

Old Kent argues that Sherman's indorsement was a "forged signature" within the meaning of § 440.3406. John Hancock

---

5. Prior to a 1993 amendment, this provision stated:

> Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

argues that because Sherman indorsed the checks with the name "Sherman and Associates Financial Services," a name that did not even resemble the name of the designated payee, his indorsement was not a forged signature.

■ The UCC does not define "forged signature." Further, no Michigan court has construed the term "forged signature" in § 440.3406.

### a.

Old Kent argues that a "forged signature" is a signature of someone other than the intended person, in this case the payee.

### i.

To support its position, Old Kent cites Comment 3 of § 440.3406 which illustrates conduct on which preclusion under the section could be based. The illustration is as follows:

> An insurance company draws a check to the order of Sarah Smith in payment of a claim for a policy-holder, Sarah Smith, who lives in Alabama. The insurance company also has a policyholder with the same name who lives in Illinois. By mistake, the insurance company mails the check to the Illinois Sarah Smith who indorses the check and obtains payment. Because the payee of the check is the Alabama Sarah Smith, the indorsement by the Illinois Sarah Smith is a forged indorsement. Section 3–110(a) . . . .

This illustration is dissimilar to the circumstances of the Sherman indorsements. Unlike the illustration, Sherman's indorsement was dissimilar to that of the payee. Further, it is significant that the illustration utilized a selected name and ascribed it to both the intended payee and indorser rather than employing a generic label for the intended payee and indorser. The use of a common name supports the argument that a forged signature must appear to be the genuine signature of the intended payee. The illustration does not support Old Kent's argument that any indorsement not that of the payee is a "forged signature."

### ii.

Old Kent also cites several cases as support for its definition in which courts have held that the payment of a check with a missing indorsement constitutes conversion under the UCC. *See Pamar Enterprises, Inc. v. Huntington Banks of Michigan,* 228 Mich.App. 727, 580 N.W.2d 11 (1998) (holding that payment of a check with a missing indorsement is conversion); *Chilson v. Capital Bank,* 237 Kan. 442, 701 P.2d 903 (1985) (same); *Tonelli v. Chase Manhattan Bank,* 41 N.Y.2d 667, 394 N.Y.S.2d 858, 363 N.E.2d 564 (1977) (same). Old Kent argues that because a missing indorsement has been treated as equivalent to a forged indorsement for the purpose of determining whether a check has been converted, similar treatment should be afforded to the Sherman indorsements. However, Old Kent cites no case which supports the proposition that a missing indorsement is similar to an indorsement of a name dissimilar to the name of the payee.

### iii.

Old Kent also cites *Kuwait Airways Corp. v. American Security Bank,* 890 F.2d 456 (D.C.Cir.1989) to support its definition of "forged signature." The court in *Kuwait* interpreted the phrase "unauthorized signature"—the phrase utilized in § 440.3406 prior to the 1993 amendment. The court reasoned that because payment of a check with a missing indorsement is conversion, a missing indorsement must be an "unauthorized signature" for purposes of the preclusion defense. *Id.* at 464 (Reasoning that "the scope of the defense under section 3–406 is coextensive with the scope of the substantive offense defined by

section 3–419(1)(c). It would make no sense to construe the statute otherwise.")

Reasoning from *Kuwait*, it can be argued that because the payment of a check bearing an indorsement wholly different from the name of the payee is conversion under § 440.3420, such an indorsement should be considered a "forged signature" for purposes of the preclusion defense in § 440.3406. However, the 1993 amendments to the UCC, as adopted in Michigan, indicate that the preclusion defense is not available in every conversion case and that these provisions should be treated separately.

First, § 440.3420 has been amended to state that the underlying offense covers instruments paid to "a person not entitled to enforce the instrument or receive payment." This language is broad and encompasses many circumstances. Conversely, the amended version of § 440.3406 limits the preclusion defense to instances in which "an alteration of an instrument" or "the making of a forged signature" occurs. The language of § 440.3406 is narrower than § 440.3420; this supports the argument that these provisions do not encompass the same circumstances.

Second, Comment 1 to § 440.3420 supports the argument that the preclusion defense is not available in every conversion case. While concluding that both examples are conversion under § 440.3420, Comment 1 makes a distinction between payment on a check with a "forged" indorsement and payment on a check with a missing indorsement. This distinction supports that argument that these are two separate examples of conversion. Because § 440.3406 only pertains to "forged signatures" and "altered instruments" it, logically, does not cover every act of conversion included in § 440.3420. Therefore, the scope of these provisions are not "coextensive."

Third, Comment 2 to the amended version of § 440.3406 supports the argument that the preclusion defense was not intended to be "coextensive" with § 440.3420. Comment 2 to § 440.3406 states:

> Section 3–406 refers to 'forged signature' rather than 'unauthorized signature' that appeared in former Section 3–406 because it more accurately describes the scope of the provision. Unauthorized signature is a broader concept that includes not only forgery but also the signature of an agent which does not bind the principal under the law of agency. The agency cases are resolved independently under agency law. Section 3–406 is not necessary in those cases.

While an unauthorized agent is a "person not entitled to enforce the instrument," and payment on a check to an unauthorized agent would constitute conversion under § 440.3420, the preclusion defense would not apply.

Last, because Comment 2 states that the indorsement of an unauthorized agent is not a "forged signature," it can be argued that the Sherman indorsement is not a "forged signature" because he was an agent of John Hancock and lacked authority to indorse the checks. However, some signatures by unauthorized agents are considered "forged signatures." Comment 3 is an illustration of an appropriate application of the preclusion defense in which an unauthorized person uses an employer's rubber stamp signature to write out checks from the employer's account. Unlike the Sherman indorsement, the signature stamp used in the illustrations appears to be the genuine signature of the employer. Therefore, the Sherman indorsements are more similar to a signature by an "unauthorized agent" and is not a "forged signature."

iv.

Finally, Old Kent makes a policy argument regarding the UCC to support the application of the preclusion defense. Old Kent argues that the UCC emphasizes allocation of fault to the party that is best able to avoid loss, therefore, the Court should look at John Hancock's negligence and apportion liability. Under § 440.3405, the employer who entrusts an employee with responsibility over an instrument and the employee fraudulently indorses the instrument the fraudulent indorsement is effective as the employer's signature. If, however, the person paying the instrument fails to exercise ordinary care, the fault is apportioned between that person and the employer. In cases were the employer is the designated payee on the entrusted instrument, fraudulent indorsement of the instrument is defined as a "forged endorsement purporting to be that of the employer." *Id.* at (b).

While Old Kent argues that this provision reflects the overall policy of the UCC to apportion liability, it offers no support for this argument. Further, § 440.3405, unlike the preclusion defense in § 440.3406, specifies that it applies to instruments in which the employer is the designated payee and the fraudulent indorsement is one which "purports to be that of the employer." *Id.* Adoption of Old Kent's proposed definition of "forged signature," would render § 440.3406 inconsistent with § 440.3405. For example, John Hancock is not bound by Sherman's indorsement under § 440.3405 because Sherman did not sign the checks with a signature that purported to be John Hancock's signature. However, under Old Kent's definition of "forged signature," Sherman's indorsement would preclude John Hancock, to the extent it was negligent in supervising Sherman, from alleging a conversion claim against Old Kent. Therefore, Old Kent's interpretation of "forged signature" is not supported by § 440.3405.

b.

John Hancock argues that a "forged signature" is a signature that replicates the name of the authorized person and is made with an intent to deceive. To support its definition, John Hancock cites a Michigan decision in which the court defined the word "forgery" in the context of the criminal code. *People v. Van Horn*, 127 Mich. App. 489, 339 N.W.2d 475 (1983). In *Van Horn*, the court defined "forgery" as "making a false document . . . with intent to deceive, in a manner which exposes another to loss." *Id.* at 490, 339 N.W.2d 475. John Hancock argues that because Sherman indorsed the checks with a signature stamp bearing the name "Sherman and Associates Financial Services," a name that neither resembles nor comes close to the name of the designated payee, John Hancock, he did not intend to deceive the bank with this signature.

Black's Law defines the word "forgery" in a manner similar to the definition advanced by John Hancock. It defines "forgery" as: "1. The act of fraudulently making a false document or altering a real one to be used as if genuine 2. A false or altered document made to look genuine by someone with the intent to deceive." These definitions support the argument that the forged signature must be substantially similar to the name of the intended signator so as to make the forged signature appear "genuine." This "genuine" appearance is essential to a forgery because it is evidence of the intent of the forger to deceive.

A "forged signature" within the meaning of § 440.3406 is one that is substantially similar to the name of the intended signator such that it appears genuine. This definition is consistent with the common usage of the word "forged" and other pro-

visions of the UCC. *See* § 440.3405 (defining "Fraudulent endorsement" as "in the case of an instrument payable to the employer, a forged endorsement purporting to be that of the employer . . . .").

c.

Because Sherman's indorsement on the checks did not appear to be the genuine signature of the payee, John Hancock, it is not a forged signature. Therefore, the preclusion defense under § 440.3406 is not applicable to John Hancock's conversion claims on the checks paid by Old Kent indorsed by Sherman.

d.

■ Even if Sherman's indorsement of the checks is considered a "forged signature," the preclusion defense in § 440.3406 does not apply because Old Kent did not pay the checks in good faith. Under § 440.3406, the preclusion defense applies only when the person asserting the defense pays the instrument in good faith. Old Kent proffers no evidence that it believed Sherman was entitled to receive credit for the amount of the checks. While it argues that some of the tellers thought that Sherman was John Hancock, Old Kent proffers no evidence to establish that Sherman presented himself to be John Hancock or that he presented himself to be associated with John Hancock in any way. In fact, the only evidence proffered is that no teller ever questioned Sherman regarding the inconsistency between the indorsements and the names of the payees.

Accordingly, because Old Kent has proffered no evidence to establish that it paid the checks in good faith the preclusion defense is inapplicable.

C. *Common-law Conversion Claim*

Old Kent argues that summary judgment is inappropriate on John Hancock's common-law conversion claim because the Michigan Tort Reform Act, M.C.L. § 600.2957(1) requires the trier of fact to

allocate liability among all persons at fault, and the amount of fault attributable to Old Kent and John Hancock is in dispute. As with the UCC conversion claim, Old Kent does not contest its liability, but rather argues that fault should be apportioned. Because John Hancock disputes that it is at fault, Old Kent argues that summary judgment is inappropriate.

The Tort Reform Act, however, has never been applied to a conversion claim by a Michigan court. Similar statutes have been adopted in other states. In these states, courts have been split over whether comparative fault analysis should be applied to an intentional tort such as conversion. Any analysis under Michigan law would likely be unclear. Because summary judgment is appropriate under the MCC conversion claim, there is no need for the Court to explore this uncertain area of Michigan law.

C. *The Statute of Limitations under M.C.L. § 600.5805*

■ Old Kent argues that the statute of limitations has run with respect to any checks paid by Old Kent prior to June 2, 1997 barring John Hancock's claim on such checks. The statute of limitations applicable to conversion claims on negotiable instruments is M.C.L. § 600.5805. Under § 600.5805, "[a] person shall not bring or maintain an action to recover damages for injuries to . . . property unless, after the claim first accrued to the plaintiff . . . the action is commenced . . . . The period of limitations is 3 years after the . . . injury to person or property." *Id.*

Old Kent argues that John Hancock's claims of conversion accrued when Old Kent credited the checks to Sherman. Because the parties agreed to stop the tolling of the statute of limitations on June 2, 2000, claims on checks paid by Old Kent prior to June 2, 1997 are tolled.

John Hancock argues that this Court should apply the discovery rule and find that its claims for conversion on the checks did not accrue until they knew or should have known about its injury. John Hancock says that it discovered the conversion in April 2000, therefore its claims were not tolled under the statute of limitations.

In *Bain v. Baker's Choice Co.*, 2001 WL 826104 (Mich.App. July 20, 2001), the court held that the discovery rule was not applicable to a claim for conversion of a negotiable instrument. The *Bain* court reasoned that public policy favored the finality of claims concerning negotiable instruments. Because "negotiability requires predictable and rapid collection through payment channels," application of the discovery rule would undermine finality and the transferability of negotiable instruments. *Id.* at *5 (citing *Menichini v. Grant*, 995 F.2d 1224 (3rd Cir.1993)). Further, the *Bain* court noted that "the vast majority of authority runs strongly against applying the discovery rule to an action for conversion of negotiable instruments in the absence of fraudulent concealment on the part of the defendant asserting the defense of the statute of limitations." *Id.* at *6. Therefore, the *Bain* court held that the injury of conversion accrued when the bank paid the unauthorized third party on the check.

John Hancock supports its argument by citing several cases in which the Michigan Supreme Court has applied the discovery rule to stop the tolling of the statute of limitations on cases asserting claims of injury to person or property. *See Williams v. Polgar*, 391 Mich. 6, 215 N.W.2d 149 (1974) (negligent misrepresentation case); *Larson v. Johns–Manville Sales Corp.*, 427 Mich. 301, 399 N.W.2d 1 (1986) (products liability case involving asbestos-related diseases); *Moll v. Abbott Lab.*, 444 Mich. 1, 506 N.W.2d 816 (1993) (pharmaceutical products liability); *Ge-bhardt v. O'Rourke*, 444 Mich. 535, 510 N.W.2d 900 (1994) (negligence claim against a hospital); *Chase v. Sabin*, 445 Mich. 190, 516 N.W.2d 60 (1994) (medical malpractice); *Goodridge v. Ypsilanti Township Bd.*, 451 Mich. 446, 547 N.W.2d 668 (1996) (disciplinary action case involving civil servants).

None of the cases cited by John Hancock are persuasive. Unlike the injuries in these cases, there is strong public policy favoring finality on a conversion claim on a negotiable instrument. As stated by the Court of Appeals for the Third Circuit, "[t]he finality of transactions promoted by an ascertainable definite period of liability is essential to the free negotiability of instruments on which commercial welfare so heavily depends." *Menichini*, 995 F.2d at 1231. Accordingly, the statute of limitations has run on John Hancock's conversion claims relating to checks paid by Old Kent prior to June 2, 1997.

D. *Pre-filing and Pre-judgment Interest*

John Hancock argues that it is entitled to pre-filing interest at 7% on the dollar amount of the converted checks and pre-judgment interest at 12% under M.C.L. § 600.6013. John Hancock reimbursed Mrs. Van Buren for the dollar amount of the checks that Sherman converted and paid her 7% interest calculated from the date of each check through October 16, 2000. John Hancock seeks pre-filing interest at the same rate.

Pre-filing interest may be awarded as an element of damages because "money has a 'use value' and interest is a legitimate element of damages used to compensate the prevailing party for the lost use of its funds." *Gordon Sel–Way, Inc. v. Spence Brothers, Inc.*, 438 Mich. 488, 499, 475 N.W.2d 704 (1991). "[T]he pivotal factor in awarding such interest is whether it is necessary to allow full compensation." *Id. See also Manley, Bennett,*

*and McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 821 F.Supp. 1225 (E.D.Mich.1993) (awarding pre-filing interest because "[w]ithout adequate interest, plaintiff cannot be made whole, and defendant would be unjustly enriched."). Old Kent's conversion of the checks deprived John Hancock of the use of their value. Accordingly, John Hancock is awarded pre-filing interest on the checks on which the statute of limitations has not run at the rate of 7% from the date of the conversion through October 16, 2000, the amount paid by John Hancock to Mrs. Van Buren. John Hancock is also awarded the interest it paid to Klein on checks issued by Klein. *O'Brien v. Chateau Grand Travers, Ltd.*, 62 B.R. 35 (W.D.Mich.1983) (holding that "the rate [of pre-filing interest] is vested in the sound discretion of the trier of fact.")

■ Under M.C.L. § 600.6013(5), pre-judgment interest is awarded on a judgment rendered on a written instrument and is "calculated from the date of filing the complaint to the date of the judgment at a rate of 12% per year compounded annually." *Id.* Accordingly, John Hancock is entitled to 12% interest on the amounts paid by Old Kent after June 2, 1997 calculated from the date of filing of the complaint to the date of satisfaction of judgment.

### IV. *Conclusion*

Accordingly, John Hancock's motion is GRANTED with respect to its UCC conversion claim. Old Kent's motion is GRANTED and John Hancock's claims regarding checks paid by Old Kent prior to June 2, 1997 are DISMISSED.

The amount of the Van Buren checks on which the statute of limitations has not run is $404,217.44. The amount of the Klein checks on which the statute of limitations has not run and the interest paid by John Hancock on these checks is $19,000. Therefore, the deputy clerk will enter a partial judgment awarding John Hancock $423,217.44. John Hancock shall submit a calculation of the pre-filing interest on the Van Buren checks on which the statute of limitations has not run and a calculation of the pre-judgment interest as set forth in this memorandum and order. With this information, the Court will enter a final judgment.

SO ORDERED.