# STATE OF MICHIGAN

# COURT OF APPEALS

LAURA ABBONIZIO, MELANIE
HULSLANDER, a Minor, by Next Friend
BRYAN HULSLANDER, and PRESTON
HULSLANDER,

Plaintiffs-Appellants,

v

BANK OF AMERICA, NA, COMERICA BANK
& TRUST, NA, and LEVEL ONE BANK,

Defendants-Appellees.

UNPUBLISHED
June 1, 2017

No. 330022
Wayne Circuit Court
LC No. 15-005474-NZ

Before: SERVITTO, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Plaintiffs, Laura Abbonizio, Melanie Hulslander, a minor, by next friend Bryan Hulslander, and Preston Hulslander, appeal as of right the order granting summary disposition in favor of defendants, Bank of America, NA, Comerica Bank & Trust, NA, and Level One Bank, regarding plaintiffs' claim of conversion of checks under the Uniform Commercial Code (UCC), MCL 440.1101 *et seq.* We affirm.

This matter arises out of the misappropriation of funds by plaintiffs' attorney, Brian J. Benner, following his representation for claims stemming from a motor vehicle accident. Abbonizio was voluntarily paid personal injury protection (PIP) benefits in the amount of $7,737.78. The third-party negligence action was settled for $400,000. The checks written by the insurers to plaintiffs and Benner were received by Benner, signed by Benner as plaintiffs' personal representative, with Benner designated in the signatory line as having power of attorney for all plaintiffs, and deposited in his client trust fund (IOLTA) account. Thereafter, Benner removed all of the funds without payment to plaintiffs.

Plaintiffs asserted a claim for conversion against defendants under the UCC. Plaintiffs contended that the banks, and in particular Level One Bank as a depository bank, violated the provisions of the UCC by negotiating a check without the proper authorization by all payees, thus breaching the presentment warranties. See MCL 440.4208.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(4) and (10), and the trial court granted the motion. In granting summary disposition in favor of defendants, the

-1-

trial court did not specifically address the provisions of the UCC cited by plaintiffs in support of their claim of violation of the statutory provisions and the imposition of liability. Rather, the trial court found that plaintiffs' claims were not sustainable due to the absence of proximate causation; in other words the harm suffered by plaintiffs was not attributable to the banks, but rather, the subsequent wrongdoing of Benner.

As discussed in *Bernardoni v City of Saginaw*, 499 Mich 470, 472; 886 NW2d 109 (2016), a trial court's decision on a motion for summary disposition is reviewed de novo "to determine if the moving party is entitled to judgment as a matter of law." "Jurisdictional questions under MCR 2.116(C)(4) are questions of law, which are reviewed de novo." *Fulicea v State of Michigan*, 308 Mich App 230, 232; 863 NW2d 385 (2014) (citation and quotation marks omitted). "A motion for summary disposition made under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. The Court considers all affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion." *Bernardoni*, 499 Mich at 472-473 (citation omitted). Pursuant to MCR 2.116(G)(4):

> A motion under subrule (C)(10) must specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact. When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, judgment, if appropriate, shall be entered against him or her.

Hence, "[t]his rule requires the adverse party to set forth specific facts at the time of the motion showing a genuine issue for trial. A reviewing court should consider the substantively admissible evidence actually proffered by the opposing party. When the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Bernardoni*, 499 Mich at 473 (citations omitted).

On appeal, plaintiffs assert that the trial court erred in granting summary disposition to defendants because the signatures on behalf of the Hulslander plaintiffs were unauthorized, rendering the check invalid and its deposit a conversion. Plaintiffs further assert that the powers of attorney signed by Abbonizio were invalid and that the Hulslanders' claims should not be bifurcated based on jurisdictional limits. Finally, plaintiffs suggest that the grant of summary disposition was premature given the need for continuing discovery. We disagree.

Initially, a point of clarification is required. Plaintiffs frequently refer to Benner's endorsement of the checks as a "forged" signature. This is not an accurate characterization premised on the statutory language, which determines the applicable provision of the UCC and the related defenses that are available. MCL 440.3420 references and is relevant to instruments paid to "a person not entitled to enforce the instrument or receive payment." MCL 440.3420(1). "This language is broad and encompasses many circumstances." *John Hancock Fin Servs, Inc v*

*Old Kent Bank*, 185 F Supp 2d 771, 777 (ED Mich, 2002), aff'd 346 F3d 727 (CA 6, 2003).[1] In contrast, MCL 440.3406 "limits the preclusion defense to instances in which 'an alteration of an instrument' or 'the making of a forged signature' occurs." *Id.* As such, the language comprising MCL 440.3406 is deemed to be "narrower" than that contained in MCL 440.3420, leading to the conclusion that the cited "provisions do not encompass the same circumstances." *Id.* MCL 440.3406, comment 2, states in relevant part: "Unauthorized signature is a broader concept that includes not only forgery but also the signature of an agent which does not bind the principal under the law of agency. The agency cases are resolved independently under agency law. Section 3-406 is not necessary in those cases." Thus, while an unauthorized agent is a "person not entitled to enforce the instrument" and payment on a check to an unauthorized agent would constitute conversion under § 440.3420, the preclusion defense[2] would be inapplicable. *John Hancock Fin Servs, Inc*, 185 F Supp 2d at 777.

Because Benner's signature, asserted in a representative capacity for Bryan Hulslander, would constitute an unauthorized signature and not a forgery, MCL 440.3420 governs this claim. MCL 440.3420 states, in relevant part:

> (1) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment . . .
>
> * * *
>
> (3) A representative, other than a depository bank, who has in good faith dealt with an instrument or its proceeds on behalf of one who was not the person entitled to enforce the instrument is not liable in conversion to that person beyond the amount of any proceeds that it has not paid out.

A "depository bank" is defined in MCL 440.4105(b) as "the first bank to take an item even though it is also the payor bank, unless the item is presented for immediate payment over the counter." It is undisputed by the parties that Level One Bank is a "depository bank" in accordance with the statutory definition.

The $400,000 check issued by Auto-Owners Insurance indicated that it was payable, "to the Order of Laura Abbonizio, Bryan Hulslander as Next Friend of Preston Hulslander and Melanie Hulslander *and* their attorney Brian J. Benner, P.C." The five checks issued by AAA were payable to "Benner & Foran *and* Laura Abbonizio." The use of the word "and" in

---

[1] Although not binding on this Court, federal caselaw may be viewed as "persuasive authority." *Travelers Property Cas Co of America v Peaker Servs, Inc*, 306 Mich App 178, 188; 855 NW2d 523 (2014) (citation omitted).

[2] See UCC 3-406, e.g.

identifying the payees is relevant. In accordance with the applicable portion of MCL 440.3110(4), "If an instrument is payable to 2 or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced *only by all of them.*" (Emphasis added.). Thus, the Auto-Owners check must have been signed by *all* identified payees.

Although Abbonizio challenges the validity of her signed powers of attorney, the initial dispute centers on the acceptance and negotiation of the $400,000 check by Level One Bank based on Benner's alleged unauthorized endorsement of the instrument in the absence of an executed power of attorney for Bryan Hulslander in his capacity as next friend for the minor children. There is, in actuality, no dispute that Benner's endorsement of the check on behalf of Bryan Hulslander as next friend of the minor children was unauthorized given the absence of any documentation executed by Hulslander granting such authority to Benner. As such, MCL 440.3110(4) establishes that a conversion occurred with respect to Hulslander. Specifically, MCL 440.3110(4) provides, in pertinent part, "If an instrument is payable to 2 or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them." This is buttressed by the associated Comments discussing this subsection, which explain:

> If an instrument is payable to X and Y, neither X nor Y acting alone is the person to whom the instrument is payable. Neither person, acting alone, can be the holder of the instrument. The instrument is "payable to an identified person." The "identified person" is X and Y acting jointly. Thus, . . . X or Y, acting alone, cannot be the holder or the person entitled to enforce or negotiate the instrument because neither, acting alone, is the identified person stated in the instrument. [MCL 440.3110, comment 4 (citations omitted.)]

While Benner had no executed power of attorney for Bryan Hulslander in his capacity as next friend for the minor children, Abbonizio, as an individual, cannot establish conversion of the checks with respect to herself. This is necessarily so, based on her execution of powers of attorney granting Benner the authority to negotiate and deposit the checks issued from Bank of America and Comerica Bank & Trust into his IOLTA account.

Abbonizio, at the outset of the automobile negligence action, signed a retainer agreement that granted "a specific power of attorney" to Benner "to endorse and deposit into the client trust account any . . . checks received . . . and made payable to [Benner] in whole or part . . ." Later in the litigation, following settlement of the third-party action, Abbonizio signed a second power of attorney, on her own behalf, granting Benner "a limited power of attorney to sign my name onto any settlement check received in the matter of my personal injury claim for the purpose of depositing said check into the Brian J. Benner, IOLTA account." Benner, as Abbonizio's agent, was thus acting with actual authority on her behalf, defined in *Black's Law Dictionary* (10th ed), as the "[a]uthority that a principal intentionally confers on an agent or authority that the agent reasonably believes he or she has as a result of the agent's dealings with the principle," when depositing all of the checks (voluntary PIP payments and third-party settlement monies) into his trust account and no conversion of those checks occurred with respect to Abbonizio. This comports with MCL 440.3402(1), which states, in relevant part:

-4-

If a person acting, or purporting to act, as a representative signs an instrument by signing either the name of the represented person or the name of the signer, the represented person is bound by the signature to the same extent the represented person would be bound if the signature were on a simple contract. If the represented person is bound, the signature of the representative is the "authorized signature of the represented person" and the represented person is liable on the instrument, whether or not identified in the instrument.

So long as the powers of attorney were valid Benner had the actual authority to endorse and deposit into the client trust account any checks received and made payable to Benner in whole or part on Abbonizio's behalf, as set forth in the retainer agreement.

Abbonizio's assertion that the powers of attorney were invalid because they do not comport with the formalities of a durable power of attorney under MCL 700.5501 is disingenuous. Abbonizio contests the validity of the powers of attorney based on the failure to have her signature witnessed and notarized. See MCL 700.5501(2). This formality is, however, irrelevant because of the absence of any indication that either power of attorney was intended or designed to be a durable power of attorney, which requires the inclusion of very specific language. To be construed as a durable power of attorney, the document must contain the words "This power of attorney is not affected by the principal's subsequent disability or incapacity, or by the lapse of time," for example, or "This power of attorney is effective upon the disability or incapacity of the principal," or "similar words showing the principal's intent that the authority conferred is exercisable notwithstanding the principal's subsequent disability or incapacity and, unless the power states a termination time, notwithstanding the lapse of time since the execution of the instrument." MCL 700.5501(1). Hence, the failure to abide by the formalities for executing a durable power of attorney are not applicable where the power of attorney does not contain the requisite language necessary to be construed as a durable power of attorney.

Plaintiffs contend, however, that the endorsements cannot be bifurcated; in other words the unauthorized endorsement by Benner for Bryan Hulslander negates the entire transaction and imposes liability. In *Pamar Enterprises, Inc v Huntington Bank of Mich*, 228 Mich App 727; 580 NW2d 11 (1998), a drawee and depository bank were sued for allegedly violating their statutory duties in improperly paying a check to one of the identified payees in the absence of an endorsement of a second payee. *Id.* at 730-731. The Court in *Pamar* determined that the endorsement of one payee, in the absence of an endorsement by the second payee, "was not sufficient to allow negotiation of the check." *Id.* at 733. The Court, citing MCL 440.3420(1), found, "a bank may be liable for conversion if it makes or obtains payment on a check that is payable to two payees, not alternatively, but endorsed by only one of the payees." *Id.* at 734. Thus, in accordance with *Pamar* and MCL 440.3420(1), "an instrument is converted if a bank 'makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.' . . . A conversion action may be brought by the intended payee against either the depository bank or the drawee bank." *Pamar*, 228 Mich App at 734 (citations omitted). Given the above, we agree with plaintiffs that the negotiation of the check received in the amount of $400,000 from Bank of America constituted a conversion under MCL 440.3110(4) and MCL 440.3420(1) due to the unauthorized signature of Benner on behalf of Bryan Hulslander. That, however, does not resolve the matter. The issue of ultimate liability rests on whether a defense is available to the banks.

This Court addressed possible defenses available to banks for breach of the presentment warranty as an issue of first impression in *Comerica Bank v Mich Nat'l Bank*, 211 Mich App 534, 538; 536 NW2d 298 (1995), which recognized "that a bank may escape liability for honoring a check on a faulty or improper endorsement, or even with no endorsement, if the bank can prove that the intended payee received the proceeds of the check." The principles underlying the intended-payee defense were explained as "preventing a drawer from being unjustly enriched by recovering for an improperly paid check where the proceeds of the check in fact were received by the payee" and in instances "where a bank's improper payment is not a cause of the drawer's injury flowing from the transaction." *Id.* As a consequence, this Court held "that the intended-payee defense is available to a bank in defending an action for breach of its presentment warranties." *Id.*

The intended-payee defense has been explained as providing "that a drawee bank is not liable to the drawer of a check for an improper payment if (1) the proceeds of the check reach the person the drawer intended to receive them and (2) the drawer suffers no loss proximately caused by the drawee's improper payment." *Pamar Enterprises, Inc*, 228 Mich App at 737. Plaintiffs contend that Abbonizio and the Hulslanders were the intended payees and did not receive any of the monies, obviating defendants' ability to establish the first element of the intended-payee defense. Defendants, on the other hand, contend that the check was received by the intended payee because it was received by plaintiffs' attorney and deposited into his IOLTA account for distribution. Defendants argue that because the proceeds were not ultimately used for their intended purpose is not relevant because the monies went into the proper account. We agree with defendants.

The checks for the PIP benefits were received by the intended payee, Abbonizio and her attorney, premised on their "payable to" designation and the powers of attorney executed by Abbonizio. The powers of attorney authorized Benner's signature and deposit into his IOLTA account on behalf of Abbonizio. The loss of the monies associated with these checks was caused by Benner's fraudulent conduct in removing the money from the IOLTA account and not distributing the proceeds in accordance with the retainer agreement. Because Abbonizio's loss was not proximately caused by any improper payment by defendants, on her behalf, her claim cannot be sustained.

No different outcome occurs with reference to the Hulslanders. There is no evidence that Bryan Hulslander approved, directed or agreed to permit Benner to sign for him in a representative capacity. Given this deficiency, plaintiffs' argue that the check that was payable to him as one of the identified payees did not reach the intended payee through its deposit in the IOLTA account. This is called into question, however, by assertions made within plaintiffs' complaint indicating:

> 9. Benner's obligation was to communicate to plaintiffs that the check had arrived, obtain their endorsement, deposit the checks in his Trust or Iolta account and upon the checks clearing, distribute funds to plaintiffs for their portion of the settlement and distribute to others any obligation plaintiffs were required to pay out of the settlement funds.

The complaint states that it was the expectation of Abbonizio and the Hulslanders that the checks would be deposited in the IOLTA account. Plaintiffs' retainer agreement also indicated the inclusion of the minor children, with Abbonizio signing as the adult on their behalf. Hence, although the $400,000 check was deposited into the IOLTA account with an unauthorized signature, pursuant to the allegations within the complaint, the funds did reach their intended destination or payee. There is no dispute or suggestion by plaintiffs that Benner was not functioning as their legal representative; as such, it would be the expectation of the insurance companies issuing the checks that the individual or entity intended to receive the payment was legal counsel, on behalf of his clients. Thus, it must be concluded, based on the factual circumstances and plaintiffs' pleadings, that the checks were written with the intended purpose of being remitted to plaintiffs' legal counsel or representative for subsequent distribution.

In addition, to establish the intended-payee defense it is necessary to demonstrate that the loss suffered was not the proximate cause of the improper payment. Plaintiffs' contend that had the bank refused to negotiate the check due to the unauthorized signature, the check would not have been placed into the IOLTA account and, therefore, would not have been accessible for Benner's fraud and conversion. This argument is without merit or legal support. The check was placed into the IOLTA account; at this juncture the banks had no control regarding the distribution of the proceeds. The loss incurred by plaintiffs is the immediate, direct and proximate result of Benner's fraud and wrongdoing.

Plaintiffs' contention that the deposit of the check into the IOLTA account comprises the proximate cause of the loss is too attenuated to be viable. Our Supreme Court has defined "proximate cause as that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, without which such injury would not have occurred. An intervening cause breaks the chain of causation and constitutes a superseding cause which relieves the original actor of liability; unless it is found that the intervening act was reasonably foreseeable. If reasonable minds could not differ regarding the proximate cause of a plaintiff's injury, courts should decide the issue as a matter of law." *Black v Shafer*, 499 Mich 950; 879 NW2d 642 (2016) (citations and quotation marks omitted). Defendants' negotiation or acceptance of the check did not constitute a proximate cause of the harm suffered by plaintiffs. Rather, it was Benner's misuse and fraud in withdrawing the entirety of the funds from the IOLTA account that constituted an intervening cause of the injury, breaking the chain of causation and alleviating defendants' liability.

Plaintiffs further assert that the grant of summary disposition was premature and that they should have been afforded additional discovery to depose Benner regarding his intentions. The trial court rejected plaintiffs' request for continued discovery, impliedly indicating that the issue before the trial court comprised a matter of law. "[A] grant of summary disposition may be premature if the party opposing the motion has not had a reasonable opportunity to conduct discovery." *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, 513; 853 NW2d 481 (2014). "Whether a motion for summary disposition under this rule would be premature depends on whether further discovery stands a fair chance of uncovering factual support for the litigant's position." *Id.* (citation and quotation marks omitted).

This is not a situation where there was a lack of discovery. Rather, plaintiffs' suggest that the ability to depose Benner to uncover his intentions with regard to the checks and deposits

would permit them to ascertain relevant information for the trial court's consideration. The trial court rejected the need for the discovery requested, noting the unlikely probability that the information sought could be obtained given Benner's current criminal charges and his assumed reluctance to engage in any admissions or statements that would further implicate his criminal liability and the lack of relevance of Benner's intent to the legal issue before the trial court. As such, the trial court did not err in finding that the continuation, or extension, of discovery was unlikely to assist the trial court in ruling on the motion for summary disposition or develop information pertinent to the legal issue before it.

Based on the above analysis, this Court need not address plaintiffs' additional challenge to the trial court's grant of summary disposition premised on jurisdictional requirements.

Affirmed.


/s/ Deborah A. Servitto
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood